### STATE v. DREW BATTLE.

(Decided April 3, 1900.)

*Burning Stable—The Code, Chapter 985, Sub-Section 6, and Acts 1885, Chapter 66—Evidence—Motive—Malice Towards Agent of Owner—Retaining Grand Jury— Unnecessary Descriptive Words "Unlawfully, Maliciously and Feloniously"—Surplusage.*

1. Declaration of defendant that he was mad with the agent of the owner of the property, incompetent evidence of ill-will towards the owner, and on objection should have been excluded.

2. While the State is not bound to furnish evidence of motive for the commission of crime by the accused, yet if it undertakes to do so, it should be done by proper testimony.

3. Retaining a grand jury over for service at a subsequent term, authorized by Act of 1899, chap. 471, sec. 19, establishing the Eastern District Criminal Court, although an innovation of questionable utility in the administration of justice, is not inhibited by the Constitution.

4. The descriptive words, "wantonly and maliciously," are used in the Act 1885, chap. 66, characterizing the offense—the additional words, "unlawfully, wilfully and feloniously," used in the indictment, are simply surplusage—*utile per inutile non vitiator.*

INDICTMENT for stable burning under The Code, sec. 985 (6), heard on appeal from the Criminal Court of EDGECOMBE County, before *Bowman, J.,* at Fall Term, 1899, of the Superior Court.

Upon the trial in the Criminal Court the Solicitor offered to prove by the witness Thomas Tanner, as furnishing a motive for the criminal act, that the defendant told him last year that he was mad with Bullock, (superintendent of the owner).

The evidence was objected to, but allowed.    Defendant excepted.    After conviction and judgment the defendant appealed to the Superior Court.    His Honor, Judge *Bowman,* sustained the ruling and affirmed the judgment, and defendant appealed to the Supreme Court.

The defendant also excepted to the bill of · indictment because found by a grand jury brought over for service from the preceding term.

The defendant also claimed that there was a variance between the offense charged and the proof made, owing to the phraseology of the indictment, which has resulted in his being sentenced excessively under the wrong act.

MONTGOMERY, J., writes the opinion of the Court.
CLARK, J., writes dissenting opinion.

*Mr. G. M. T. Fountain,* for appellant.
*Mr. Attorney-General,* and *Messrs. Gilliam & Gilliam,* for the State.

MONTGOMERY, J.    The defendant was indicted under subsec. 6, of sec. 985, of The Code, but it appears from the statement of the case on appeal made up by his Honor who presided, that the trial was conducted in respect to the evidence offered by the State as if the indictment had been found under sub-sec. 2, of that section.    The stable was burnt on the 13th of May, 1899, and belonged to Frederick Philips, and was situated on his plantation in Edgecombe County.

Evidence was introduced going to prove that about a week before the fire the defendant, a cropper on the plantation, had had a difficulty with William Philips, his father-in-law and laborer on the farm, and had become mad with Bullock, the superintendent of the farm, because he interfered in the

trouble between the defendant and William Philips; that the
defendant asked Bullock to discharge one of the sons of Wil-
liam Philips, saying he would not live on the farm with such
rascals, and that Battle told one Mangum that he, the defend-
ant, had told Bullock that he must get rid of William Philips'
boys, and Bullock "would give him no satisfaction," and
that he was mad about that. That evidence was not objected
to by defendant; but when the Solicitor offered to prove by
Thomas Tanner that the defendant "told him last year that he
was mad with Bullock," the defendant objected to the evi-
dence, and upon its being received entered an exception. The
ruling was sustained by the Superior Court, which we think
was an error. The objection was well taken. In no con-
ceivable aspect could the anger or vicious temper of the de-
fendant toward Bullock furnish any motive for the defendant
to burn the property of Judge Philips. It is idle to argue
that because one may have a dislike for the manager of a
farm that that feeling could be allowed as evidence against
one charged with burning the property of the owner of the
farm as tending to show a motive for the burning; and the
principle is not altered because the accused might be a cropper
on the farm. So far as the evidence objected to is concerned
it had no connection with Bullock as manager of the farm.
Indeed, it was not attempted to be shown by the witness
Tanner that the defendant gave him the reason for his dis-
like of Bullock. The State was not bound to furnish a
motive in the breast of the defendant for the commission of
the crime with which he was charged; but as long as it was
thought necessary because (except as to an alleged confession
made by the defendant to Rowe, the detective), the evidenc
was entirely circumstantial, to prove a motive it devolved
upon the State to show the motive by proper testimony. The
jury understood that that part of the testimony which was

STATE *v*. BATTLE.

received over the objection of the plaintiff was considered material and competent by the Court, and that it was introduced for the purpose of showing a motive for the act; and it must have influenced the jury in their verdict of "guilty" against the defendant. As it was incompetent it ought not to have been received, and as a new trial is to be had for that error it will be proper for us to discuss the whole evidence bearing on the question of the ill-will of the defendant to Bullock, including that which was received without objection. The principle of evidence which the trial court adopted in receiving testimony of a person's ill-will toward one who is an agent simply for another as proof going to show a motive for burning the property of the principal, and the affirmation of that doctrine by the Superior Court on appeal, is a matter of so vital importance to the people of the State that we feel it our duty to consider it. It seems to us that it can not be a true principle of evidence, and that if it is so acted on great injustice is certain to be done to those who may be indicted for crime, and especially to people who are in service and who are subject to the discipline and control of bosses, superintendents, overseers or managers. Common observation teaches us all that hot-tempered and hasty words towards managers are not of infrequent occurrence, whenever men who labor are undertaken to be controlled, and that oftener than otherwise those frictions are harmless and not founded on malice even against the superintendents. Therefore it would be a harsh and cruel rule to infer, on the part of those employed, malice against the owners and a motive for the injury or destruction of their property in such cases. We are of the opinion that the whole of the evidence bearing upon the question of the ill-will of the defendant against Bullock was incompetent. As we have seen, there were no *threats* made by the defendant to do any injury to the person or to

the property of the owner of the farm—or to the manager
either as to that.    Neither was there any evidence that the
defendant contrived to have Judge Philips informed of the
difficulty on the farm, and of the defendant's request that the
manager should dismiss a laborer from the premises.    If the
defendant had taken such a course, and the owner of the plan-
tation had declined to order Bullock to dismiss the laborer,
then evidence of such facts might have been competent and
sufficient to warrant the jury in drawing the inference that
the defendant's ill-will had extended to the owner of the prop-
erty; that it might be inferred that such a course on the part
of the defendant amounted to a threat to do some damage to
the owner or his property, and furnish a motive for the
crime.    But it may be argued that the defendant, because of
his ill-will toward the manager, determined that the manager
should lose his place, and to produce that result, burnt the
barn, the object being to terrify the owner of the property,
and compel him to dismiss the manager for fear of further
injury to or destruction of his property if he kept him in his
service.    The answer to that argument is that malice or ill-
will is evidence upon which a jury might infer a motive to
commit a crime against a person or the property of the
object of ill-will or malice; but the commission of the crime
for the purpose of compelling the injured person to punish
the enemy of the criminal, can not be a matter of inference
of the motive to commit the crime.    It is too remote.    Such
a conclusion must be based upon evidence, not of motive, but
of the fact as to the object on the part of the criminal com-
mitting the crime.    And in the case before us, as we have
said, so far as the record shows, the owner of the property did
not know of the defendant's trouble with William Philips, or
of the request made of the manager to discharge Philips' sons,
or that he had even heard that the defendant wished him to

discharge Bullock from his employment. This case is nothing like the cases of *State v. Rhodes,* 111 N. C., p. 647, and *State v. Thompson,* 97 N. C., 496. In both those cases, the indictments being under sub-sec. 6, of sec. 985, of The Code, there was not only ill-feeling but there were open threats made by the defendant. In the first-mentioned case it appeared that the wife of the defendant was living on the land of the prosecutrix—Mrs. King—and the defendant complained that her son was keeping defendant's wife away from him. It appeared in the evidence in that case that the defendant, before the out-house was burnt, had made threats against Mrs. King and her son, who was her agent and manager, and lived on the land. There were several witnesses who testified that they had heard the defendant, while talking about his wife and complaining because King let her live on his land, say that "he could do King a private injury and the law wouldn't hurt him." The son and mother lived on the premises, the son being her manager, and threats to injure the person and property were made against both, by the defendant.

In the case of *State v. Thompson, supra,* threats which were made against the sons and grandsons of the owner of the house which was burned, were admitted as evidence against the defendant, and this Court affirmed the ruling of his Honor in receiving the evidence on the ground of general ill-will toward the family, and as furnishing a motive. The language of the Court was: "The proof of threats directed against the son and grandson from their near relationship to the owner of the burned house was also relevant though perhaps feeble in showing general ill-will to the family, and a motive for the act." We are not saying that the ill-will of the defendant in this case toward the owner of the plantation could not have been shown on the trial, if it existed. It could

66——126

have been, for there was evidence against the defendant tending to show that he burned the barn; but we mean to say that ill-will on the part of one accused of the crime of burning property toward an agent of the owner of the property is not sufficient evidence to go to the jury from which an inference might be drawn of a motive to commit the crime.

We will not conclude this opinion without considering two other important questions which will be certain to arise again on the next trial. One of them is, whether or not the latter part of sec. 19, of chap. 471, of the Acts of 1899, establishing the Eastern District Criminal Court is constitutional. The clause reads as follows: "In the event the grand jury at any term have not been discharged by the Court, but retained for service at a subsequent term or terms, then there shall be drawn by the County Commissioners, or Sheriff and Commissioners as aforesaid, only eighteen jurors for service as *petit* jurors at any such subsequent term: *Provided,* said grand jury shall not be retained for more than one term subsequent to the term at which they were originally drawn." This case was tried at a special term of the Criminal Court held in July, 1899, the same at which the bill of indictment was found, and there was no grand jury drawn and sworn at that term of the court. But at May Term, 1899, a regular term of the court, a grand jury was drawn and sworn. After the grand jury had concluded its work at the May term, they were notified by the Judge that they would be continued until the next term under the statute referred to. The grand jury was present at the special term of the court, and the bill of indictment in the case duly returned "a true bill" by them. The retention of the grand jury from one term to another is an innovation upon our custom, but we know of no restriction placed upon the General Assembly which would prevent it from enacting such legislation. It is likely that such a sys-

tem will result injuriously in its operation. It is almost
impossible that interested parties will not bring influences
to bear upon members of the grand jury who are held over
from one term to another which they would not be subjected
to if they were drawn, and served and discharged as under the
old system—the system of the Superior Courts. But with
that this Court has nothing to do. The Legislature had the
power to enact the statute. The other matter remaining for
consideration is the request for a special instruction asked by
the defendant which is as follows: "The defendant Drew
Battle can not be convicted in this case under sec. 985, sub-
sec. 6, of The Code, for the charge of the State here is the
burning of a stable in the night time, containing mules, and
this charge is provided for in sub-sec. 2, of said section. That
if this is not the State's charge then there is a fatal variance
between the charge and the evidence, and the defendant Drew
Battle can not be convicted." The instruction was declined,
and the ruling affirmed by the Superior Court, and we see no
error in that ruling. It is true that in sub-sec. 2, of sec. 985,
of The Code, the *wilful* burning of a stable containing a
horse or a mule, in the night time, subjects the convicted
person to imprisonment in the penitentiary for a term of not
less than five nor more than ten years; and it is true that on
the trial the Solicitor introduced evidence tending to show
that the stable was burned in the night time, and that it con-
tained five mules. It is not stated in the record that this
testimony was objected to. The defendant, however, was not
indicted under sub-sec. 2, but under sub-sec. 6, of the section
referred to above. Sub-sec. 6, has been amended (Acts 1885,
chap. 66) by striking out the words "unlawfully and
maliciously" in the first, second and third lines thereof, and
substituting therefor in both places the words *"wantonly and
maliciously,"* and by further striking out the words "with

intent thereby to injure or defraud any person or persons body politic or corporations." The bill of indictment contains the words "unlawfully, wilfully and feloniously, in addition to the words wantonly and wilfully. But the bill is not affected by the use of the words "unlawfully, maliciously and feloniously;" they are simply surplusage. The indictment under sub-sec. 6 is for the *wanton* and *wilful* burning, and subjects the convicted person to a longer term of imprisonment, in the discretion of the trial Judge, than for a simple *wilful* burning under sub-sec. 2. The difference between the meaning of the words "wanton" and "wilful" is to be found in the case of the *State v. Brigman,* 94 N. C., 888, and in the case of the *State v. Morgan,* 98 N. C., 641.

New trial.

CLARK, J., dissenting. The defendant was indicted and tried under sub-sec. 6, sec. 985, of The Code. The Judge refused to hold that the trial was under sub-sec. 2, of that section, and passed a sentence which was authorized by sub-sec. 6, but which would not have been legal under sub-sec. 2. The said sub-sec. 6, has been amended, Laws 1885, chap. 66, by striking out in line one the words "unlawfully and maliciously" and inserting "wantonly and wilfully," and striking out in lines ten and eleven the words "with intent to injure or defraud any person, or persons, body politic or corporation." So no proof of malice towards the owner of the property is necessary to constitute the offense. The evidence of ill-will expressed by the defendant towards the manager or overseer shortly before the fire, was admitted without exception, and is not before us. The corroboratory evidence that the defendant also expressed ill-will towards the overseer last year, which might well have been only four months earlier, in December of the previous year, was admitted over

STATE *v.* BATTLE.

defendant's exception, and is the sole ground relied upon for a new trial. That could not be prejudicial after the admission without objection of the evidence as to the several more recent expressions of malice towards the overseer. But if the latter evidence had been excepted to, and had been brought before us, no precedent is cited which holds that malice towards the person in charge of the property would not be admissible upon the question of motive, and there are sound reasons why, in many cases, it would throw material light upon the transaction. Suppose the owner was that intangible thing, a corporation; if malice as a motive is competent, as it always is, it could be shown that the accused was angry with the person managing the property, or such cases would be an exception to the universal rule that motive can be shown. And that case differs in no material aspect from this, in which the overseer represents a non-resident owner. But if the owner were resident and present every day, can it be held as a proposition of law that evidence that an employee entertained ill-will towards an overseer, and wished to discredit him and cause his removal, is not evidence of motive? It is not an adequate motive, but is the motive for any crime ever adequate for its perpetration? If it is, it is not motive but justification. It can not be said either as a proposition of law or as a matter of human experience that a desire to injure one person becomes irrelevant when the act will in fact injure another person still more. The desire to discredit the overseer and cause his removal is none the less a motive because the burning will injure the owner. Motive was not offered as an ingredient of the crime, but as circumstantial evidence, tending with other proof to show commission of the crime by the defendant. The abduction of a child may be from ill-will to the parent or guardian, though the greater injury is to the child itself against whom there is no motive shown.

On this question of motive the long-established and well-observed rule is laid down by Roscoe's Criminal Evidence, and cited by ASHE, J., in *State v. Green,* 92 N. C., 779, on an indictment for burning a gin house. "Where it has been shown that a crime has been committed, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, *although remote,* are admissible in evidence." The jury should be cautious with respect to the importance they attach to this species of evidence, still it is to be weighed by them, and the Court should not refuse whatever aid the evidence of motive may be to them. "It is always a just argument on behalf of one accused that there is no apparent motive to the perpetration of the crime. Men do not act wholly without motive. On the other hand, proof of motive tends, in some degree, to render the act so far probable as to weaken the presumptions of innocence, and corroborate evidence of guilt." 3 Rice Ev., sec. 281. "Threats" are of course evidence to show ill-will, but not the only evidence of it. Ill-will can be shown to exist in many an instance where no threat has been made to injure the object of it. A dog may bite though he does not bark.

In *State v. Green, supra,* as evidence tending to show motive, the State proved the declarations of defendant before the fire that he had no money, but expected soon to have some, and that shortly after the fire he did have money. The Court says: "Facts tending to show a motive, although remote, are admissible in evidence." That evidence no more proved that the defendant did the burning than ill-will towards the overseer in this case. It was simply evidence tending to show as a motive that he was to be paid, as in this case, the motive that he would injure the overseer and perhaps cause his removal. It is slight evidence, and taken by itself, no evidence, but it fits into its place, taken in con-

nection with the evidence pointing to defendant's guilt, by impairing the defense based on the want of all apparent motive. In the celebrated "Molly Maguire" trials in Pennsylvania, a most material element, as explaining the motive of the defendants, was their ill-will towards the section bosses who had far less independent control of them than the overseer here of an owner not residing upon his farm. In the Wat Tyler insurrection in England (and in many another) the motive was no hostility to the King or the government, but to the tyranny of petty officials, and to secure their removal.

In *State v. Rhodes,* 111 N. C., 647, for burning a barn, the State was permitted to show that the defendant had made threats previous to the burning that he would do some injury to the son of the prosecutor. Threats are merely evidence of ill-will towards the son which could be "shown by declarations or acts just as well or better," says Roscoe's Criminal Evidence, 96, 740, cited in *State v. Rash,* 34 N. C., 389. The point is to show ill-will as a motive. In *State v. Gailor,* 71 N. C., 88, indictment for arson, the ill-will, as a motive, was shown by defendant's declarations, there being no threats. In *State v. Thompson,* 97 N. C., 496, proof of ill-will against the son and grandson of the owner was admitted as evidence of motive. It is true the ill-will towards them was proved by threats, but the ill-will as a motive would have been just as competent if proven by defendant's admissions or declarations, without threats.

Malice towards the son of the owner in *State v. Rhodes, supra,* and against the son and grandson in *State v. Thompson, supra,* was more remote than the ill-will here shown against the overseer and the direct motive to secure his dismissal. In Stephens's Digest of Evidence, 36, it is said that any fact that supplies a motive for the act is competent, and

instances expressions of ill-will used many years before, against the deceased, by one charged with his murder; and in Wharton's Criminal Evidence (9th Ed.), sec. 784, it is said that it is relevant to show as motive that the defendant was inflamed with animosity to a cause with which the injured person was identified.

The law as to ill-will as a motive for the perpetration of crime as stated in the authorities, is that while it should be weighed with caution by the jury it is to be left to them to rebut the presumption which would arise from the absence of motive; that this ill-will may be shown by acts, declarations, admissions or threats, and that it need not be directly against the owner of the property destroyed (in arson cases), but may be animosity towards his son, his grandson or others connected with him or even animosity against a cause with which he is identified. There are well-established cases (in Ireland certainly) where the sole motive was animosity towards the political party to which the owner of the property belonged.

It is an innovation to reject the evidence of motive offered in this case, and the principle laid down, if followed, will limit, not increase, the facilities afforded the jury to arrive at the truth of a charge investigated by them.