## THE STATE v. KODAT, Appellant.

### Division Two, November 12, 1900.

**Divorced Wife:** WITNESS AGAINST HUSBAND: ASSAULT. A divorced wife is not a competent witness against her husband in a criminal prosecution against him for an assault upon a third party which occurred during their marriage and after divorce proceedings had been instituted, neither as to her conversation with him and his statements made at the time of the assault while yet his wife, nor as to the fact that he shot at such third party. It is the policy of the law that those things which are privileged during the marriage relation shall remain forever inviolable, and the divorced wife, from reasons of public policy, is incompetent to testify against her husband to the same extent that she would have been had the marriage relation never been dissolved.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

As a general proposition the relation of a witness at the time his testimony is offered is the sole test as to his competency. No former disqualification could render him incompetent. The divorce of a wife from her husband annuls the marriage, and places her in the same situation, so far as her competency as a witness is concerned, that she was in prior to the marriage. White v. State, 50 S. W. Rep. l. c. 708; Toovey v. Baxter, 59 Mo. App. 470:

GANTT, P. J.—The defendant was indicted in the circuit court of the city of St. Louis, duly arraigned, tried and convicted, of an assault with intent to kill Mrs. Josephine Kretsch, on or about the 22d day of October, 1899, in the city of St. Louis.

The indictment was in the ordinary form, and amply sufficient. No error has been discovered in the record proper, and none pointed out by the defendant; indeed, he has no counsel in this court. The instructions were such as have been approved again and again by this court. In the motion for a new trial we note complaint is made of the refusal of certain instructions prayed by defendant. No such instructions have been incorporated in the bill of exceptions, and as a matter of course the propriety of refusing them is not before us.

The evidence fairly establishes the following facts:

The defendant and his wife had separated, she living at No. 1921 South Broadway, St. Louis, and he at a place several blocks distant. She was living in the same house with one ——— Stussel, the father of her illegitimate child; this child was five months old when she married the defendant. In November following the commission of the crime with which defendant is charged, and before the trial, she procured a divorce from the defendant, and married Stussel.

On the evening of October 26th, the prosecuting witness, Josephine Kretsch, was at the house of Mrs. Kodat, making her a visit. They were sitting outside of the house when the defendant came up and called out to his wife, "Hello, whore, I want my furniture," to which the wife replied, "You can't have any furniture until after the divorce case." The child, who was then eighteen months old, was with its mother, and he kicked the child and called it a bastard and a son of a bitch. Upon this Mrs. Kodat called upon her husband to fight her and not the child, and she took hold of him and

kicked him. Mrs. Kretsch, in the meantime, had told the defendant that he ought to be ashamed of himself, and one John Holup, the landlord of the place, ordered defendant to leave the premises. The defendant said, "I'll fix you; I don't know whether you will be living to-morrow night yet;" and went away, and in about fifteen minutes returned with a pistol in his hand. Mrs. Kretsch then told Mrs. Kodat that she was afraid, and wished to go home, but Mrs. Kodat, seeing the pistol in the defendant's hand, told her to go back, and they both began running back in the yard; the defendant fired after them, the ball passing through Mrs. Kretsch's dress.

This is in substance the story of the shooting and the circumstances connected with it as told by witnesses, Josephine Kretsch, Mary Stussel and John Holup, the narration of each witness of course being slightly different from the others in some of the details, but all corresponding in substance and in all the main facts.

Frank Kretsch was the only witness who testified on behalf of the defendant. He was the husband of the prosecuting witness, but was not living with her; he swore that his wife's reputation for truth and veracity was bad. He was not present at the shooting and knew nothing about it. Defendant did not testify.

The evidence, if believed by the jury, was sufficient to convict defendant of having made an assault with a deadly weapon with intent to kill.

The remaining assignment of error presents a point never directly adjudicated by this court, so far as we can discover. It is this: Is a divorced wife a competent witness against her husband in a criminal prosecution against him for an assault upon a third party, when the alleged assault occurred during their marriage?

At common law a husband or wife could not testify for or against each other in any legal proceeding in which the other was a party except in the prosecution of one for criminal injury to the other, as for assault and battery, rape by a third person assisted by the husband, or forcible abduction. [1 Greenl. on Evid. (16 Ed.), secs. 334-335; State v. Berlin, 42 Mo. 572; State v. Arnold, 55 Mo. 89; State v. Willis, 119 Mo. 485; State v. Evans, 138 Mo. 116.]

The statute of Missouri has modified the common law rule to the extent that it permits them to testify against each other in divorce proceedings (R. S. 1889, sec. 8918), and by section 4218, Revised Statutes 1889, they may testify for each other in criminal prosecutions, except as to confidential communications, but not against each other. It is perfectly obvious, then, that inasmuch as defendant was charged in the indictment with an assault upon Mrs. Kretsch, Mrs. Kodat would not have been a competent witness against him if she had remained his wife at the time she was offered as a witness against him. Did her divorce from him after the assault and prior to the trial render her competent? It may be conceded that it is a general rule that the competency of a witness is to be determined by his or her relation at the time his or her testimony is offered. Still, if her incapacity remained, notwithstanding the divorce, that rule would not aid the State.

As to strictly confidential communications between husband and wife, there can be no doubt whatever that neither death nor divorce will remove the incompetency of either to testify against the other as to such. [1 Greenl. on Evid. (16 Ed.) sec. 337.] But the point with which we have to deal is the admissibility of evidence which does not fall within the common-law definition of confidential communications between husband and wife, but does come within that of privileged statements. [1 Greenl. on Evid., sec. 254 and cases

cited.] The learned circuit court permitted the wife to testify to statements made by defendant and herself in the presence of the prosecutrix and John Holup, another witness, and a crowd of boys, and to the fact that defendant shot at the prosecutrix and herself as they ran from him, and ruled that Mrs. Kodat or Stussel could not testify to any statements made out of the presence of these persons. This ruling is not susceptible of division, that is to say, evidence of statements made by the wife and husband to each other on the one hand, and the naked fact of shooting at the prosecutrix on the other. Neither were admissible. In the recent case of Shanklin v. McCracken, 140 Mo. 348, BRACE, J., reviewed the cases in this State, and it was ruled that by section 8922, Revised Statutes 1889, the "disability of the wife was expressly continued in all cases as to any admission or conversation of her husband whether made to herself *or to third parties*," and the statement made in McFadin v. Catron, 120 Mo. 252, was cited with approval, to the effect that "the wife is not a competent witness to prove what is said in a conversation by another person with her husband, nor to prove any act done in connection with such conversation, and which might be explained thereby."

We think Mrs. Stussel's evidence as to her conversation with defendant and his statements made therein while yet his wife were incompetent, and the subsequent divorce did not remove their incompetency.

. Was she competent to testify to a fact which directly showed the husband was guilty of the crime charged in the indictment, to-wit, that he shot at the prosecutrix? We think most clearly not. It is the policy of the law that these things which are privileged during the marriage relation shall remain forever inviolable, whether the relation has ceased by reason of death or divorce, and the divorced wife, from reasons of public policy is incompetent to testify against her

husband to the same extent that she would have been had the marriage relation never been dissolved, and such we think is the overwhelming weight of authority. [State v. Ray, 28 N. E. 490; State v. Phelps, 2 Tyler 374; State v. Boyd, 2 Hill. (S. C.) 298; State v. Boyd, 27 Am. Dec. 376; State v. Jolly, 3 & 4 Dev. & Battle, 110.]

The incompetent evidence having been received over the objection of the defendant, is presumed to have been hurtful unless the contrary clearly appears. Looking through the whole record we can not say this evidence was harmless, and the judgment must for this reason be and it is hereby reversed and the cause remanded for new trial. *Sherwood* and *Burgess, JJ.,* concur.