BUCK CLINTON and EDWARD CLINTON, *Plaintiffs in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. On a trial for arson a threat by the accused to "get even" with the attorney for the owner of the dwelling burned is not admissible when it is clearly shown that the threat was directed against the attorney personally and not the client.

2. To characterize a conversation as "secret" is not the giving of an expert opinion.

3. After the State has adduced testimony that the accused had committed the crime of arson and of hostility upon the part of the accused, it was not error to permit the owner of the dwelling burned to testify that he knew of no others hostile to him.

4. The defense having brought out the fact that there had been no association between his family and a witness for years, the State may show why that association had ceased.

5. Upon a trial for arson it is not permissible to ask a witness for the purpose of impeaching his character if he had ever "fished with nets," knowing that it was a violation of the fish laws.

6. The statute forbidding the State to comment upon the failure of the accused to testify does not deny its preexisting right to characterize testimony as uncontradicted and undenied, even though the testimony is as to private conversations between the witness and the accused.

This case was decided by Division A.

Writ of Error to the Criminal Court of Record for Orange County.

The facts in the case are stated in the opinion of the court.

*S. J. Hilburn* and *L. G. Starbuck,* for plaintiffs in error;

No appearance for the State.

COCKRELL, J.—Upon the reversal of this cause upon a former writ of error, (53 Fla. 98, 43 South. Rep. 312), a change of venue was granted from Volusia to Orange county, because of the alleged bias or prejudice of the Judge presiding over the Criminal Court of Record for the former county. Buck Clinton was again convicted of the crime of arson, and his father as being accessory before the fact, and were sentenced to terms of ten and two years respectively in the State's prison.

The first error is we think, well assigned. It is based upon the admission over proper objections and motions to strike testimony by Isaac A. Stewart that Edward Clinton had threatened to get even with him. Threats by the accused or other evidence of ill will directed against the owner of the property burned may be received as tending to show a possible motive for the arson, but we refuse to yield to the extension of that character of evidence so as to include one who may have borne some relation of agency to the owner. It appears that within a year of the burning there had been a civil proceeding between Clinton and Goodrich, the owner of the dwelling, which had been settled by agreement of the parties before reaching a final adjudication by the court. Judge Stewart, who was also Judge of the Criminal Court of Record for Volusia County, was the attorney for Goodrich in that litigation and within an hour after the settlement met Edward Clinton who said "I will get even

with you for this" or "I will even up with you for this
alluding to the trouble we had just settled at the Court
House." It was objected that the conversation referred
to the witness and not to Goodrich and the clear import
of the language that such was the reference is put beyond
any possible misconstruction by the subsequent testimony
of this witness that the threat related to him personally
and not his client.

Too often, unfortunately, counsel may so conduct
themselves, either through an over zeal or inherent con-
stitutional temperament, as to arouse against themselves
the personal hostility of the opposite parties greater than
that naturally existing between the opposing principals,
and there is no such necessary connection between a de-
sire to get even with an attorney whose recent fervid
antagonism still leaves a rankling, an ill-will directed
against one who has merely compromised a legal con-
tention, as to make it likely to arouse so heinous a feeling
of hostility against the client.

It might well be that the hostility against the client
would involve the attorney also or the hostility against
the attorney might also include the client, but there is
nothing in this testimony to show the feeling to be so
comprehensive; to the contrary it is direct and positive
that its exhibition had no relation to the client, but was
confined to the attorney. State v. Battle, 126 N. C.
1036, 35 S. E. Rep. 624, seems to be in point.

We see no particular harm in permitting a witness to
characterize as "secret" a conversation between one of
the defendants and his wife. It is apparent that the
witness meant only that the two went apart from the
others present and held a conversation in such low tones
as not to be heard. It would be going too far to say that
this was the expression of an opinion by a non-expert.

It was competent for the State to prove a recent law

suit between Clinton and Goodrich involving the property burned, as tending to establish animus, the fact of the burning having been testified to, and further to show that Goodrich had insisted strenuously but ineffectively upon Clinton carrying out· the agreement reached between them upon the settlement of that suit; but transactions and conversations between Goodrich and his counsel not brought home to Clinton trench upon dangerous grounds and had best be eliminated.

It being established that the Clintons entertained ill will towards Goodrich there is no error in permitting the latter to testify that he knew of no others who entertained such feelings. The State having introduced an eye-witness who testified that Buck Clinton actually did the burning, being counselled and advised thereto by his father, and having developed the hostile feeling of the Clintons towards Goodrich, might negatively prove the likelihood that no other neighbor would have a motive for such a crime.

The defense having brought out the fact that a State's witness had not associated with a member of the Clinton family for years, opened the doors to the State to show why the association had ceased.

The court erred in permitting the State on cross-examination of Sam Goodrich, a witness for the defense to elicit the admission that he had consciously fished with nets, conscious that it was against the law. Our statutes permit the impeachment of the credibility of a witness by proof that he has been convicted of any crime—except perjury which·is an absolute disqualification—or by testimony as to his general reputation. There was here no attempt to show a conviction, which necessarily includes the judicial ascertainment of the fact of guilt nor does the admitted fact of a wilful violation of the fish law go to one's general reputation. We have permitted proof

of cognate crimes by the accused himself, when a witness, Wallace v. State, 41 Fla. 547, 26 South. Rep. 713, and in that case declared that the trial "court should disallow all inquiries into collateral matters which do not *tend to affect credibility.*" To permit an examination of a witness as to the violation of a statute, the violation of which involves no moral turpitude, a *malum prohibitum,* merely renders the witness chair more odious than the demands of justice require. The inquiry had no legitimate bearing upon the credibility of the witness, is unaided by the statute and should have been suppressed.

There is no special merit in the other assignments upon the evidence.

Objections were taken to the argument of counsel to the jury to the effect that certain testimony was uncontradicted, or stood uncontradicted and undenied, as a comment upon the failure of the accused to become a witness, based upon the fact that the testimony was as to private conversations between the witness and the accused. We are cited to cases holding in substance that the State will not be permitted to argue by innuendo that the defense could have taken the stand and denied the testimony, but no such showing is made here.

The pre-existing right of the State to argue the character of the evidence adduced by it, has not been taken away by the statute permitting the accused to be a witness and forbidding the State to comment upon his failure to accept that privilege. The State still has the right to direct the attention of the jury to that portion of the evidence as to which there is conflict, and to that portion which is without conflict. Testimony may in a sense be contradicted in various ways, as by inherent improbability, by cross-examination or by the demeanor of the testifier. So long as the State does not exercise its pre-existing right, so as to make it directly or covertly

a comment upon the failure of the accused to voluntarily become a witness, the law is not violated. Frazier v. State, 135 Ind. 38, 34 N. E. Rep. 817; State v. Seely, 92 Iowa 488, 61 N. W. Rep. 184; State v. Weddington, 103 N. C. 364, 9 S. E. Rep. 577.

The State's Counsel was not strictly accurate in saying to the jury that Goodrich had been a 'witness' against Ed. Clinton's son in the Packwood murder trial. The record shows his activity in working up evidence against him in that trial and the argument to that extent was legitimate, the use of the word 'witness' was probably inadvertent and is not likely to occur again.

We discover no other reversible error upon the record.

Judgment reversed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.