STATE v. MINNIE ALDERMAN ET AL.

(Filed 21 December, 1921.)

**1. Assault—Intent to Kill—Deadly Weapon—Poison—Statutes.**

An assault by means of poison comes within the intent of our statutes making an assault with a deadly weapon with intent to kill punishable as a felony. C. S., 4213, 4214.

**2. Same—Evidence—Nonsuit—Trials—Questions for Jury.**

Evidence tending to show that after threats of poisoning made by the wife against her husband, the daughter prepared her father's breakfast at their home in the presence of her mother, sent it out to him by their son, and the daughter thereafter attempted to destroy in the fire a spoon having a greenish color on it, apparently paris green, a poison; and soon after the father had commenced his breakfast he became ill from the effects of paris green, is sufficient for conviction of the offense of an assault with intent to kill, as to each defendant.

**3. Same—Husband and Wife—Threats.**

In case of assault and battery with intent to kill by poison, with evidence tending to show the previous threats of the wife, and that the poison was put into the food prepared by the daughter in her mother's presence at their home, and that the husband was poisoned from eating thereof, the testimony of the husband as to his wife's previous threats is not inadmissible under the provisions of C. S., 1802, but is admissible for the purpose of showing knowledge and identifying the perpetrators of the crime, and is distinguishable from the rule that threats are ordinarily inadmissible on trials for assault and battery.

**4. Assault—Instructions—Intent to Kill—Poison.**

The charge upon the trial of an assault with intent to kill by administering poison by several defendants, with evidence sufficient of the guilt of each, that if one of them did it without the knowledge of the other, the one who did it would be guilty, and the other would not be, is the stating of a legal truism, and not error, when construed with the other parts of a correct charge.

**5. Assault—Evidence—Motive.**

While motive is not a necessary ingredient of the crime of an assault with intent to kill by poison (a deadly instrumentality), it may become important, with other relevant evidence, to identify the accused as the one who has administered, or helped to administer, the poison.

APPEAL by defendants from *Kerr, J.,* at May Term, 1921, of PENDER.

The defendants were convicted upon a bill of indictment which in the first count charged an attempt to kill Luther Alderman by administering paris green, a poison, to him; in the second count a secret assault with intent to kill by administering paris green; the third, an assault with intent to kill by administering paris green; and fourth, an assault with a deadly weapon by administering paris green, and thereby inflicting a serious injury upon him.

Defendants were convicted, and appealed from the judgment. The essential facts are stated in the opinion.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*C. E. McCullen for defendants.*

WALKER, J.   Exceptions 3, 4, 5, and 6 were taken to the refusal of the judge to nonsuit the State at the close of the State's evidence, and again at the close of all the evidence.

The defendants were the wife and the daughter of the prosecuting witness, Luther Alderman.   It appeared that on 14 April, 1921, the defendant, the daughter, Christiana, prepared the breakfast of her father, Luther Alderman, who was working on the farm of John Murphy, not very far from his own home.   The son, Solomon Alderman, took the breakfast to his father about eleven o'clock.   It consisted of coffee in a quart bottle, and some biscuits and meat.   He drank some of the coffee and soon thereafter declared that he had been poisoned.   The witness further stated that he did not put anything in the coffee.   Luther himself described the effect of the coffee as follows: "I chewed up a mouthful of biscuit and swallowed it, and then I took another bite.   I then took a drink of coffee to wrench it down, but when I took the drink of coffee it was so bad, it naturally burned my mouth up, and I went to heaving and throwing it up.   I said to Solomon, 'Who fixed my breakfast?'   He said, 'Christiana cooked it.'   I said, 'She or your mamma has certainly poisoned it.'"

J. A. Murphy, Sr., described the effect of the poisoning upon Luther as being very serious.   He became unconscious and remained so until the next day.   He could be heard screaming a quarter of a mile away, and he had all kinds of spasms.   The doctor testified that the poison from which he was suffering was paris green, and the chemist, after an examination of the bottle and its contents, also reported that it contained paris green.

Solomon Alderman, the son, testified that he did not put paris green in the bottle, either before or while he was carrying it to his father. The mother, Minnie Alderman, is connected with the poisoning in two ways.   First, she was at home, and Christiana was under her control and influence; second, she and her husband had been on bad terms for fifteen years, and Luther himself testified that his wife, Minnie, had told him that she was going to poison him if it was the last thing she would do, and made violent threats against him.

The daughter Christiana's connection with it was shown by the fact that she prepared the breakfast for her father and gave it to Solomon to be taken to him.   There was a spoon having something green on it which she put in the stove that the green substance might be burned off.   The theory of the defense was that Luther himself put the paris

STATE *v.* ALDERMAN.

green in the coffee after he got it from his son that morning with a view to bringing this charge against his wife and daughter. Upon the evidence, the judge was right in overruling the motion for judgment as of nonsuit.

Defendants' counsel, however, by his exceptions 1 and 2, raised the question as to the admissibility of threats testified to by the husband himself. He presents the question in two aspects, first, that this being an indictment for an assault and battery, evidence of previous threats is not admissible, citing *S. v. Kimbrell,* 151 N. C., 702. In this case, however, one of the questions involved was as to the identity of the party who put the poison in the coffee, and another, as to the knowledge of the defendants that poison had been put in the bottle. This distinguishes it from the ordinary cases of assault and battery, and takes it out of the principle of the *Kimbrell case.* He then, secondly, contends that all the evidence of Luther Alderman against his wife, Minnie, was incompetent under C. S., 1802. It is stated in Wharton's Criminal Evidence, vol. 1, p. 808, that "In all cases of personal injuries committed by the husband or wife against each other, the injured party is an admissible witness against the other. Thus, the husband may be a witness against the wife when she is prosecuted for assaulting him. The wife may be a witness against the husband on a prosecution against him for attempting to poison her." The converse, it seems, also would be true. This Court, in *S. v. Davidson,* 77 N. C., 522, held that the husband is a competent witness against the wife on a prosecution for striking him with an axe. Among the instances given of the force necessary to constitute an assault and battery, is putting a poisonous or noxious substance in another's drink whereby he is injured. 5 C. J., p. 721; see, also, 20 L. R. A., p. 863.

The defendants' third assignment of error, as stated in the brief of their counsel, is based upon an erroneous statement of the judge's charge in the particulars assigned, which was made inadvertently. The actual charge given was as follows: "If one of them did it, and the other did not know anything about it at all, then the one who did it would be guilty, if you find it beyond a reasonable doubt; and the one that had nothing to do with it would not be guilty, and you ought to so find." This charge cannot be successfully assailed. He was stating what, in law, is a truism, and this part must be read with the remainder of the charge, and so construed.

It appears that this man and his wife had lived together many years, but their married life had been anything except a peaceful one. It had been interrupted by frequent outbreaks of the wife, and if tranquility ever prevailed in their home, it was at long intervals. What the cause of their disagreement was does not clearly appear, nor can we determine

who was in fault, otherwise than by the verdict which finds that the wife attempted to commit a grave and serious offense against her husband. It was not justified, even if she acted solely in retaliation for what he may have done. She resorted to a secret and underhand method of getting rid of him, and involved her daughter with herself in the commission of the crime. She was at her home with Christiana, her daughter, when the food was prepared for her husband by the latter, and there are circumstances, though they may be slight, to show that they were acting in concert. The wife had declared her intention to kill her husband with poison, and she said it most emphatically and unrelentingly. Whatever inspired her vindictiveness towards him, she had fully made up her mind to do precisely what was afterwards attempted to be done, and almost accomplished her purpose. She therefore had the motive, which was coolly and deliberately formed, and venomously entertained, if the evidence is believed, and motive sometimes becomes very important, even though it may not be an essential element of the crime. We held, in *S. v. Adams,* 138 N. C., 688-697, that the existence of a motive may be evidence to show the degree of the offense, or to establish the identity of the defendant as the slayer, but motive is not an essential element of murder in the first degree, nor is it indispensable to a conviction, even though the evidence is circumstantial, citing *S. v. Wilcox,* 132 N. C., 1143; *S. v. Adams,* 136 N. C., 620, to which we add, *S. v. Wilkins,* 158 N. C., 603; *S. v. Millican,* 158 N. C., 617; *S. v. Matthews,* 162 N. C., 542; *S. v. Stratford,* 149 N. C., 483; *S. v. Turner,* 143 N. C., 641; *S. v. Rose,* 126 N. C., 1036; *S. v. Green,* 92 N. C., 779; *S. v. Teachey,* 138 N. C., 587.

The evidence was sufficient to support the conviction of the wife, and still stronger against the daughter. She had the spoon, at their home, discolored or stained, by some green substance having the appearance of the poison used to take her father's life, and she attempted to burn it away, but failed in her effort to do so in time to conceal the crime. The fact that the spoon was discolored by a greenish substance, and that the daughter attempted to destroy it, so that she and her mother would not be detected in carrying out the latter's threat against her husband, and the father of the girl, is almost, if not quite, conclusive evidence to rebut, or overcome, the suspicion that he had endeavored to take his own life, when he went around the house and then returned to eat his breakfast, and the other circumstances tend strongly to show that no such thing had occurred.

The defendants were very charitably treated by the very learned and humane judge who presided at the trial, in the administration of punishment for the crime, which was a very cruel and heartless one, and they have no reason to complain of the result.