STATE v. JOHN ALFORD.

(Filed 14 June 1968.)

**1. Criminal Law § 83—**

No statute provides that a husband is not a competent witness against his wife or that a wife is not a competent witness against her husband in any criminal action or proceeding; the statute now codified as G.S. 8-57, and the statutes on which it is based, simply provide that rules of the common law with reference to whether one spouse is competent to testify against the other spouse in a criminal action or proceeding are unaffected by these statutes.

**2. Same—**

Subject to common-law and statutory exceptions, the general rule of the common law that the husband or wife of a defendant in a criminal case is incompetent to testify for the State is recognized in this jurisdiction when the relationship of husband and wife is subsisting at the time of the trial; upon the absolute divorce of the parties, all asserted reasons for the rule based on (1) the fictional oneness of husband and wife and (2) the preservation of peace and harmony in the family are no longer pertinent.

**3. Same—**

Where the former husband or wife is prosecuted for a felony, the divorced spouse is a competent witness to testify for the State as to the defendant's conduct during the marriage in his or her presence when the alleged felony was being committed.

**4. Constitutional Law § 10—**

Absent a legislative declaration with reference to the competency of a divorced wife to testify for the State as to her former husband's conduct during the marriage when the alleged felony was being committed, it is for the Supreme Court to declare the public policy according to the right reason of things.

**5. Criminal Law §§ 40, 86—**

Where defendant's plea of guilty in a homicide prosecution is set aside in a post-conviction hearing on the ground that defendant did not knowingly and understandingly enter the plea, testimony in a subsequent trial relating to such void plea is incompetent for any purpose, and it is prejudicial error to permit the solicitor to cross-examine defendant, for purposes of impeachment, as to his plea of guilty in the first trial.

HIGGINS, J., concurs in result.

APPEAL by defendant from *Crissman, J.,* September 25, 1967 Criminal Session of GUILFORD, High Point Division.

Defendant was indicted at April 12, 1965 Criminal Session of Guilford for the first degree murder of George Bethea on March 2, 1965. When the case was called for trial at May 3, 1965 Criminal Session, the Assistant Solicitor advised the court that the State "does not elect to try this defendant for first degree murder, but

instead, elects to try him for second degree murder." Defendant, represented by John W. Langford, his court-appointed counsel, entered a plea of not guilty. Thereupon, a jury was selected, sworn and impaneled. At the conclusion of all the evidence defendant, through his said counsel, withdrew his plea of not guilty and tendered a plea of guilty of manslaughter, which plea was accepted by the State. Judgment imposing a prison sentence of "not less than ten (10) years nor more than fifteen (15) years" was pronounced.

At March 20, 1967 Session of Guilford, Greensboro Division, a post-conviction hearing was conducted by His Honor, Walter E. Brock, the presiding judge. The hearing was on stipulations and on the testimony of defendant (then petitioner) and of said attorney who had represented him at May 3, 1965 Criminal Session. In an order filed May 30, 1967, Judge Brock, based on findings of fact set forth therein, concluded as a matter of law "(t)hat defendant did not knowingly and understandingly enter a plea of guilty to the offense of manslaughter" at May 3, 1965 Criminal Session. Judge Brock's order vacated and set aside the plea, the judgment and the commitment entered at May 3, 1965 Criminal Session and directed that defendant be retried. His order provided further that defendant be released from custody on condition that he give an appearance bond in the amount of $5,000.00.

Thereafter, at September 25, 1967 Criminal Session, defendant was again placed on trial on said bill of indictment. Again the State announced that defendant would not be tried for first degree murder but for second degree murder or manslaughter as the evidence may warrant. Defendant having again pleaded not guilty, a jury was selected, sworn and impaneled. Thereupon, in the absence of the jury, the court allowed defendant's motion that the State be restricted to a prosecution of defendant for manslaughter. The court did not then so notify the jurors but did instruct them to this effect when charging the jury.

Evidence was offered by the State and by defendant. The State's evidence consisted largely of the testimony of Mary Alford, who was defendant's wife on March 2, 1965, when George Bethea, her brother, was killed, but who had obtained an absolute divorce prior to the trial at September 25, 1967 Criminal Session. The jury returned a verdict of guilty of manslaughter. Thereupon, the court pronounced judgment imposing a prison sentence of not less than ten nor more than fifteen years, with the provision that credit be given defendant for the time he served on the sentence imposed by the judgment pronounced at May 3, 1965 Criminal Session.

Defendant excepted and appealed. The court, on account of de-

fendant's indigency, appointed defendant's present counsel, who as court-appointed counsel had represented defendant at September 25, 1967 Criminal Session, to represent him on appeal, and ordered Guilford County to pay all necessary costs incident to appeal.

*Attorney General Bruton and Assistant Attorney General Harrell for the State.*
*Haworth, Riggs, Kuhn & Haworth for defendant appellant.*

BOBBITT, J.   On March 2, 1965, Mary Alford, John Alford, husband of Mary Alford, Mary Ann Alford, their three-year-old daughter, and Ed Bethea and George Bethea, brothers of Mary Alford, lived together in the house where George Bethea was shot and killed. At the September 25, 1967 Criminal Session, Mary Alford, then the divorced wife of defendant, did not testify to any confidential communication from defendant to her. Her testimony related to what was said and done by defendant and others in her presence on the occasion of the homicide.

Defendant contends the admission of Mary Alford's testimony over his objection was prejudicial error. He bases his position upon the statutory provisions now codified as G.S. 8-57 and the decisions of this Court in *State v. Jolly, et al.,* 20 N.C. 108 (1838), *State v. Jones,* 89 N.C. 559 (1883), and *State v. Raby,* 121 N.C. 682, 28 S.E. 490 (1897).

G.S. 8-57 provides: "The husband or wife of the defendant, in all criminal actions or proceedings, shall be a competent witness for the defendant, but the failure of such witness to be examined shall not be used to the prejudice of the defense. Every such person examined as a witness shall be subject to be cross-examined as are other witnesses. No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage. Nothing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding, except to prove the fact of marriage and facts tending to show the absence of divorce or annulment in cases of bigamy and in cases of criminal cohabitation in violation of the provisions of G.S. 14-183, and except that in all criminal prosecutions of a spouse for an assault upon the other spouse, or for any criminal offense against a legitimate or illegitimate or adopted or foster minor child of either spouse, or for abandonment, or for neglecting to provide for the spouse's support, or the support of the children of such spouse, it shall be lawful to examine a spouse in behalf of the State against the other spouse; Provided that this section shall not affect

pending litigation relating to a criminal offense against a minor child."

The factual situations and holdings in *Jolly, Jones* and *Raby* will be discussed below.

"At common law the husband or wife of the defendant in a criminal case was incompetent to testify either for the State or for the defense." Stansbury, N. C. Evidence, Second Edition, § 59; 97 C.J.S., Witnesses § 75; 58 Am. Jur., Witnesses § 175. Obviously, the reasons assigned for the incompetency of a husband or wife to testify *for* the State in such criminal case were quite different from those assigned for the incompetency of a husband or wife to testify *in defense of the* other. As stated by Dean Wigmore: "(T)he two have no necessary connection in principle, and yet they travel together, associated in judicial phrasing, from almost the beginning of their recorded journey." 8 Wigmore, Evidence § 2227 (McNaughton rev. 1961).

The portion of G.S. 8-57 providing that "(n)othing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding," with exceptions therein set forth, originated as Section 3, Chapter 43, Laws of 1866, providing in part "(t)hat nothing contained in the second section of this act . . . shall in any criminal proceeding render any husband competent or compellable to give evidence for or against his wife, or any wife competent or compellable to give evidence for or against her husband." The second section of said 1866 statute provided "(t)hat on the trial of any issue, or of any matter or question, or on any enquiry arising in any suit or other proceeding in court, or before any judge, justice, jury or other person having by law authority to hear and examine evidence, the parties and the person in whose behalf any suit or other proceeding may be brought or defended, shall, except as hereinafter provided, be competent and compellable to give evidence, either *viva voce,* or by deposition, according to the practice of the court, in behalf of either or any of the parties to said suit or other proceeding."

In *Rice v. Keith,* 63 N.C. 319 (1869), the Court pointed out that the purpose and function of said 1866 statute was to remove, except as provided therein, all common law disqualifications of parties as witnesses on account of *their interest* in the outcome of the trial. It was held the 1866 statute did not change the common law rule that a wife was not a competent witness *for* her husband. This common-law rule was changed by Section 3, Chapter 110, Laws of 1881.

No statute provides that a husband is not a competent witness against his wife or that a wife is not a competent witness against her husband in any criminal action or proceeding. The statute now

codified as G.S. 8-57, and the statutes on which it is based, simply provide that rules of the common law with reference to whether a husband is competent to testify against his wife or a wife is competent to testify against her husband in a criminal action or proceeding are unaffected by these statutes. In this respect, the portion of G.S. 8-57 quoted above differs from the portion thereof providing directly and positively that "(n)o husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage."

There were and are exceptions to the common-law rule that a wife was not a competent witness against her husband in a criminal action. In *State v. Hussey,* 44 N.C. 123 (1852), Nash, C.J., states: "The rule, as we gather it from authority and reason, is, that a wife may be a witness against her husband for felonies perpetrated, or attempted to be perpetrated on her, and we would say from an assault and battery which inflicted or threatened a lasting injury or great bodily harm; but in all cases of a minor grade she is not." Subsequently, it was provided "(t)hat in all criminal prosecutions *of a husband* for an assault and battery upon the person of the wife, it shall and may be lawful to introduce and examine the wife in behalf of the State against her said husband; any law or custom to the contrary notwithstanding." (Out italics.) Laws of 1856-'57, Chapter 23. In the absence of a statute providing that the husband was a competent witness to testify against his wife when charged with felonious assault upon him, this Court continued to apply the common law. Thus, in *State v. Davidson,* 77 N.C. 522 (1877), where *the wife* was indicted for an assault and battery upon her husband, it was held the husband was a competent witness to testify his wife struck him with an axe. The opinion of Faircloth, J. (later C.J.), after referring to *State v. Hussey, supra,* and to *State v. Rhodes,* 61 N.C. 453 (1868), and to *State v. Oliver,* 70 N.C. 60 (1874), said: "In the present case the wife is indicted for an assault and battery upon her husband by striking him with an axe, without any sufficient provocation. Is he a competent witness to prove the assault? The instrument used is a dangerous one, and is a deadly weapon, calculated to inflict lasting injury. The use of it indicates malice, and its character would be considered by a jury upon a question of an assault with intent to kill. We think in such case the defendant is indictable, and *ex necessitate* that the husband is competent, as the wife would be if the assault had been upon her." In *State v. Alderman,* 182 N.C. 917, 110 S.E. 59 (1921), it was held that the husband was a competent witness to testify against his wife upon her trial for attempting to murder him by poisoning. In

*State v. French,* 203 N.C. 632, 166 S.E. 747 (1932), it was held the husband was a competent witness to testify against his wife upon her trial for malicious assault and battery upon him with a deadly weapon and in a secret manner. There was no statute providing the husband was a competent witness for the State in a criminal prosecution of his wife for an assault upon him until the enactment of Chapter 116, Session Laws of 1967.

The general rule of the common law that the husband or wife of a defendant in a criminal case is incompetent to testify for the State has been severely criticized by eminent authority. Wigmore, *op. cit. supra,* §§ 2227 and 2228. Be that as it may, it is recognized in this jurisdiction, subject to common-law and statutory exceptions, when the relationship of husband and wife is subsisting at the time of trial. Obviously, upon absolute divorce, all asserted reasons for the rule based on (1) the fictional oneness of husband and wife and (2) the preservation of peace and harmony in the family, are no longer pertinent. If the divorced husband or wife of the defendant in a criminal case is to be held incompetent to testify for the State, such a decision must be based on considerations of public policy. *State v. Jolly, et al., supra.*

In *State v. Jolly, et al., supra,* the defendants, Curen Jolly and Elizabeth Whitley, were indicted and tried for fornication and adultery. Henry C. Whitley, offered as a witness by the State, *had been* the husband of Elizabeth but they were divorced prior to the trial. It is stated that "(t)he witness was examined and proved a criminal intercourse between the defendants before the separation of the witness from his wife, the defendant, Elizabeth, and for some time after that separation, but before the divorce." It was held the divorced husband was not a competent witness to testify to the adultery of his wife during the subsistence of their marriage. In an eloquent statement, Gaston, J., said: "The law had invited confidence, and it should not permit this confidence to be violated or betrayed. But it is not enough to throw protection over *communications* made in the spirit of confidence. The intimacy of the marriage union enables each to be a daily and almost constant witness of the *conduct* of the other; and thus in fact a confidence, reaching much farther than that of verbal communications, is forced upon each of the parties. What one may even desire to conceal from all human eyes and ears is thus almost unavoidably brought within the observation of the other. The confidence which the law thus *extorts* as well as that which it *encourages,* ought to be kept sacred, and therefore the husband and wife are not in general admissible to testify against each other as to any *matters* which *occurred* during the relation."

STATE *v.* ALFORD.

Decision in *State v. Jolly, et al., supra,* was followed in *State v. Jones, supra,* and in *State v. Raby, supra,* both involving prosecutions of the divorced wife and her paramour for fornication and adultery and holding that the divorced husband was incompetent to testify as to the wife's alleged adultery during the subsistence of their marriage. There has been no consideration by this Court of the questions involved in *Jolly, Jones* and *Raby* since 1897.

We are not concerned with testimony as to a "confidential communication" made by defendant to plaintiff during their marriage. In this connection, see *Hicks v. Hicks,* 271 N.C. 204, 155 S.E. 2d 799 (1967). We are concerned with whether the divorced wife of a defendant on trial for unlawful homicide is a competent witness for the State as to her former husband's conduct in her presence during the subsistence of their marriage when the alleged felony was being committed.

On this appeal, we do not decide that the divorced husband or wife would be a competent witness to testify against the other in *all* criminal prosecutions as to what occurred during the subsistence of their marriage. It may be conceded, *arguendo,* that considerations of public policy were sufficient to justify holding the divorced husband an incompetent witness in factual situations involving misdemeanors, *e.g.,* those involved in *Jolly, Jones* and *Raby.* However, in a criminal prosecution for a felony, weightier considerations of public policy, to wit, the protection of the citizens of the State by the proper enforcement and just administration of the criminal law, are present. In our opinion, and we so hold, where the former husband or wife is prosecuted for a felony the divorced spouse is a competent witness to testify for the State as to what occurred during the subsistence of their marriage in his or her presence when the alleged felony was being committed. Absent a legislative declaration with reference thereto, it is for this Court to declare the public policy according "to the right reason of things." *State v. Wiseman,* 130 N.C. 726, 41 S.E. 884 (1902).

Defendant rightly concedes that the weight of authority supports the proposition that a divorced spouse may testify under the circumstances approved herein.

This general statement appears in 97 C.J.S., Witnesses § 80: "Although there is a conflict of opinion, the weight of authority, as well as of reason, favors the view that an absolute divorce places the former spouses in the same position with respect to competency as witnesses as though there had been no marriage, and that each may testify for or against the other, even as to matters which occurred or came to his or her knowledge during the existence of the marriage

relation, unless such matters are in the nature of confidential communications, as discussed *infra* §§ 266-275, although there is authority denying the competency of a divorced spouse to testify to any matters occurring prior to the divorce, at least with respect to matters coming to the knowledge of a spouse through means of the marital relation, *or holding that one spouse is incompetent after divorce to testify against the other with respect to adultery committed by the other prior to divorce.* Irrespective of this conflict of authorities, the former spouses are competent for or against each other as to matters which occurred after the divorce." (Our italics.) In accord: 58 Am. Jur., Witnesses § 204. See Annotation, "Effect of divorce or annulment on competency of one former spouse as witness against other in criminal prosecution." 38 A.L.R. 2d 570 *et seq.* Also, see 8 Wigmore, *op. cit. supra*, § 2237, and Stansbury, *op. cit. supra*, § 59, at 128.

Decisions holding the divorced wife of a defendant in a criminal case is not a competent witness for the State as to the defendant's conduct during the subsistence of the marriage include the following: *State v. Kodat,* 158 Mo. 125, 59 S.W. 73, 81 Am. St. Rep. 292, 51 L.R.A. 509 (1900); *People v. Gessinger,* 238 Mich. 625, 214 N.W. 184 (1927); *Menefee v. Commonwealth,* 189 Va. 900, 55 S.E. 2d 9 (1949). (Note: No others have come to our attention.) Our decisions in *State v. Jolly, et al., supra,* and in *State v. Raby, supra,* are cited in *State v. Kodat, supra.*

Decisions holding the divorced spouse of a defendant in a criminal case is a competent witness for the State as to the defendant's conduct during the subsistence of the marriage include the following: *State v. Snyder,* 84 Wash. 485, 147 P. 38 (1915); *State v.. Americk,* 42 Wash. 504, 256 P. 2d 278 (1953); *Commonwealth v. Beddick,* 180 Pa. Super. 221, 119 A. 2d 590 (1956); *DeWolf v. State,* Okl. Cr., 245 P. 2d 107 (1952); *Pittman v. State,* Okl. Cr., 279 P. 2d 1108 (1955); *People v. Zabijak,* 285 Mich. 164, 280 N.W. 149 (1938); *State v. Matthews,* 133 Iowa 398, 109 N.W. 616 (1906); *Smith v. Commonwealth,* 237 Ky. 317, 35 S.W. 2d 546 (1930); *State v. Leasia,* 45 Ore. 410, 78 P. 328 (1904); *United States v. Gonella,* 103 F. 2d 123 (3 Cir. 1939); *Pereira v. United States,* 347 U.S. 1, 98 L. Ed. 435, 74 S. Ct. 358 (1954); *United States v. Ashby,* 245 F. 2d 684 (5 Cir. 1957); *United States v. Termini,* 267 F. 2d 18 (2 Cir. 1959); *Cooper v. United States,* 282 F. 2d 527 (9 Cir. 1960).

Doubt is cast upon the authority of *State v. Kodat, supra,* by this portion of the opinion of Clark, C.J., in *State v. Dunbar,* 360 Mo. 788, 230 S.W. 2d 845 (1950): "The common-law rule which generally prohibited one spouse from giving testimony against the

other was based upon the interest of the public in preserving har-. monious marital relations. The exception to the general rule, which permitted the injured spouse to testify as· to a criminal injury inflicted upon such spouse by the other, was also based upon public interest in protecting individuals and the necessity for such evidence, in many cases, to prove the commission of a crime.

"We believe that the administration of justice would be aided by *permitting* one spouse to testify against the other in any criminal case, but that such testimony should not be *compelled* except as to charges of a serious nature. Perhaps the dividing line should be between misdemeanors and felonies."

Further doubt is cast upon the authority of *State v. Kodat, supra,* by the opinion in *State v. Kollenborn,* 304 S.W. 2d 855 (Mo. 1957).

Although no reference is made in *People v. Zabijak, supra,* to the earlier Michican case of *People v. Gessinger, supra,* it would seem that *Zabijak* is in conflict with and supersedes *Gessinger.*

In *Menefee v. Commonwealth, supra,* the Virginia statute under consideration read: "Neither husband nor wife shall, without the consent of the other, be examined in any case as to any communication *privately* made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted." (Our italics.) The testimony of the divorced wife did not relate to a crime committed in her presence or of which she had personal knowledge. Rather, it related to events subsequent to an alleged robbery, namely, to her identification of articles in the defendant's possession and exhibited to her, and the defendant's statements to her in private with reference thereto. It was held that this was testimony as to confidential communications between spouses in violation of the quoted statute. Substantially the same factual situation was involved in *People v. Gessinger, supra,* which is cited in *Menefee.*

For the reasons stated, assignments of error based on exceptions to the admission of the testimony of Mary Alford, as to what she saw and heard on the occasion the alleged crime was being committed, are untenable. The State's evidence, inclusive of Mary Alford's testimony, was sufficient to require submission to the jury. Hence, the motion for judgment as in case of nonsuit was properly denied.

Even so, a new trial must be ordered. Defendant testified in his own defense. On cross-examination, the court, over defendant's objections, permitted the Assistant Solicitor to cross-examine defendant, for purposes of impeachment, concerning the plea of guilty of manslaughter entered by defendant at the May 3, 1965 Criminal

Session. The eliciting and admission of this evidence was erroneous and must be deemed prejudicial. It having been judicially determined by Judge Brock on May 30, 1967, that defendant did not knowingly and understandingly enter the plea of guilty of manslaughter at May 3, 1965 Criminal Session, the said (vacated) plea was a nullity. Testimony in a subsequent trial relating to such void plea was incompetent for *any* purpose. For prejudicial error in this respect, a new trial is awarded.

New trial.

HIGGINS, J., concurs in result.