DONALD C. CONNOR, SR. AND BETTY CONNOR v. ROYAL GLOBE INSURANCE COMPANY

No. 8127SC267

(Filed 16 February 1982)

1. **Rules of Civil Procedure §§ 8, 13 — failure to reply to counterclaim — admission of material or relevant allegations**

   When a defendant makes a counterclaim denominated as such and the plaintiff fails to make a reply, the *material* or *relevant* averments of the counterclaim are deemed admitted.

2. **Rules of Civil Procedure §§ 8, 13 — failure to reply to counterclaim — allegations not deemed admitted**

   In an action to recover under a fire insurance policy in which defendant insurer counterclaimed for an amount it had paid to the mortgagee, plaintiffs' failure to file a reply to the counterclaim did not constitute an admission of allegations in the counterclaim that plaintiffs violated conditions of the policy by burning the building, increasing the hazard and misrepresenting certain facts so as to defeat plaintiffs' right to recover under the policy where such allegations were not material or necessary to defendant's recovery because the parties had stipulated that defendant was entitled to a credit or judgment on its counterclaim for the amount it had paid the mortgagee regardless of any violation of the policy by plaintiffs. G.S. 1A-1, Rule 8(d).

3. **Evidence § 22.2 — guilty pleas in district court — exclusion of evidence**

   In an action to recover under a fire insurance policy on a building used as a private men's club, the trial court's exclusion of insured's testimony on cross-examination that he pleaded guilty in district court to operating an illegal gambling house at the club and operating a social club without an A.B.C. permit, if erroneous, was not prejudicial to defendant insurer where insured further explained that he entered the guilty pleas in district court without an attorney pursuant to a plea bargain agreement, that he appealed his cases for

1

a trial *de novo* in the superior court because the State did not carry out its part of the plea bargain, that he retained an attorney to represent him in the superior court, and that all charges against him were dismissed in the superior court.

**4. Insurance § 136— action on fire policy—sufficiency of evidence to support findings**

  In an action to recover under a fire insurance policy in which defendant insurer alleged that the fire was deliberately set, the evidence was sufficient to support findings by the trial court that an S.B.I. agent saw fuel lines in the floor but could not say where they were and that a second S.B.I. agent couldn't recall seeing fuel lines in the floor but thinks he would remember them if they were there.

APPEAL by defendant from *Howell, Judge.* Judgment entered 4 December 1980 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 19 October 1981.

THE PLEADINGS

Plaintiffs instituted this action to recover on a fire insurance policy issued by the defendant. Plaintiffs alleged that a building covered by the policy had been destroyed by fire and that the defendant had unjustifiably refused to pay.

The defendant's responsive pleading was styled "Answer and Counterclaim." Defendant's Answer admitted issuance of the policy and admitted fire damage to the insured building, but denied liability. The defendant then set forth affirmative defenses in its Answer, alleging that certain conditions of the policy were violated in that one or both of the plaintiffs (1) deliberately burned the building or procured someone else to burn it; (2) increased the fire hazard by opening the building (a private men's club) to the public and allowing gambling and the sale of liquor and drugs on the premises; and (3) willfully concealed or misrepresented material facts with respect to the management of the building, the activities carried on in the building, and the origin of the fire. Finally, defendant asserted as a defense its claim for a setoff of $19,573.66, an amount paid by the defendant to the plaintiffs' mortgagee.

In its counterclaim, the defendant set forth more details concerning its payment to the mortgagee, Home Savings and Loan Association. After re-alleging that the plaintiffs had violated the conditions of the policy by burning the building, by increasing the

Connor v. Royal Globe Insur. Co.

hazard, and by willfully misrepresenting material facts, defendant alleged that it had paid the outstanding balance of $19,573.66 to Home Savings and Loan Association pursuant to the terms of the insurance policy[1] and had received a subrogation receipt, and that defendant was subrogated to the rights of Home Savings and Loan Association and was entitled to recover $19,573.66 from the plaintiffs. The plaintiffs filed no reply to this counterclaim. Defendant subsequently moved for entry of default and default judgment based upon the plaintiffs' failure to reply, but no ruling was entered on this motion prior to the trial.

## EVIDENCE AT TRIAL

The case was tried without a jury. Mr. Connor testified that he owned the building in Gaston County that was insured by the defendant; that the building was leased to Elijah Teal of Charlotte and was operated by Teal as a social club known as the Kings Mountain Men's Club (Club); that he received $600 rent per month plus the profits from certain "game machines" that were on the premises; that the building and its contents were completely destroyed by fire during the early morning hours of 6 April 1979; and that the building had been raided by law enforcement officers on the night of 5 April 1979 about three or four hours before the fire. Mr. Connor admitted that he was quite frequently at the Club on Friday and Saturday nights, but he denied having anything to do with the operation of the club and denied being aware of any gambling, liquor sales or drug sales on the premises.

Plaintiffs also presented evidence that before the fire the value of the building was approximately $150,000 and the value of

---

1. The insurance policy provides:

Whenever the company shall pay the mortgagee (or trustee) any sum for loss under this policy, *and shall claim that, as to the mortgagor or owner, no liability therefor existed,* the Company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim. [Emphasis added.]

its contents was $57,283. The building was insured for $80,000. The personal property was insured for $25,000.

For defendant, a State Bureau of Investigation (S.B.I.) agent testified that he went to the Club six or seven times during February and March 1979 in an undercover capacity; that he saw Mr. Connor inside the Club at the entrance on each occasion; and that he observed gambling, the serving of alcohol, and drug transactions inside the Club. Defendant then called as witnesses three other S.B.I. agents who participated in an investigation of the fire. Their testimony tended to show that five samples were taken from the floor of the building, that chemical analysis revealed the samples to contain "a petroleum distillate in the boiling point range of number two fuel oil or heating oil," and that some of the cement floor of the building revealed spalling which indicated that intense heat had been concentrated there. In the opinion of one S.B.I. agent the fire at the building "had been set." The defendant also formally introduced certain allegations in its counterclaim.

## JUDGMENT

Following the presentation of evidence, the trial court entered judgment, finding facts and drawing conclusions of law. The trial court ruled that the defendant did not prove that the fire had been deliberately set or that the plaintiffs violated any of the policy conditions. The trial court awarded plaintiffs $25,000 for the personal property loss and $80,000 for the building, diminished by $19,573.66, the amount of defendant's counterclaim.

*Jones, Hewson & Woolard, by R. G. Spratt III, and H. C. Hewson, for defendant appellant.*

*Horn, West & Horn, by J. A. West, for plaintiff appellees.*

BECTON, Judge.

I

The principal issue on this appeal concerns the effect of the plaintiffs' failure to file a reply to the defendant's counterclaim. G.S. 1A-1, Rule 8(d) provides, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the respon-

sive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided." G.S. 1A-1, Rule 7(a) provides that "[t]here shall be . . . a reply to a counterclaim denominated as such. . . ."

According to defendant, one paragraph of the counterclaim—the one that alleges that the plaintiffs violated the conditions of the policy by burning the building, by increasing the hazard, and by willfully misrepresenting material facts—includes allegations which, if taken as admitted, would defeat the plaintiffs' right to recover on the policy.

The trial court refused to take this paragraph as admitted, and we agree with the trial court. Before setting forth the bases for our decision, we issue this caveat: Litigants should comply strictly with our Rules. Because, and only because, we find that defendant was entitled to recover the $19,573.66 it paid the mortgagee without reference to the counterclaim do we uphold the trial court.

Significantly, our Supreme Court in *Exum v. Boyles*, 272 N.C. 567, 579, 158 S.E. 2d 845, 855 (1968) said:

[i]t would be exceedingly technical to hold that, though the complaint . . . alleged facts giving rise to the doctrine of the last clear chance, the plaintiff may not receive the benefit of the doctrine . . . merely because . . . facts were alleged in the complaint rather than in a reply.

Indeed, because of our "general policy of proceeding to the merits of an action," *Johnson v. Johnson*, 14 N.C. App. 40, 43, 187 S.E. 2d 420, 422 (1972), when to do so would not violate the letter or spirit of our Rules, this Court has refused to adhere strictly to Rule 8(d) in the context of a plaintiff's failure to file a reply to a counterclaim in at least two cases.

In *Eubanks v. Insurance Co.*, 44 N.C. App. 224, 261 S.E. 2d 28 (1979), *disc. review denied* 299 N.C. 735, 267 S.E. 2d 661 (1980), we concluded that Rule 8(d) did not apply since the defendant had not filed a true counterclaim. "In its answer defendant captioned its allegations of false representations a 'counterclaim.' . . . However, we conclude that, in effect, defendant did nothing more than raise an affirmative defense to plaintiff's cause of action to

which a reply was neither required nor permitted by G.S. 1A-1, Rule 7(a)." *Id.* at 229, 261 S.E. 2d at 31.

In *Johnson v. Johnson,* the trial court allowed the plaintiff to present evidence in defense of the defendant's counterclaim and then allowed the plaintiff to file a late reply conforming to the evidence already presented. This Court held "that the trial court was within its discretion in admitting plaintiff's evidence and allowing plaintiff to file a reply." 14 N.C. App. at 43, 187 S.E. 2d at 422. *See also Dyotherm Corp. v. Turbo Machine Co.,* 233 F. Supp. 119, 39 F. R. D. 370 (E. D. Pa. 1966).

[1] Rule 8(d) of the Federal Rules of Civil Procedure is identical to our 8(d), and commentators on the federal rules suggest one limitation upon the scope of Rule 8(d) which is not specified in the Rule. Professors Wright and Miller, in discussing the limits of Rule 8(d), write, "[a]n additional exception probably can be implied to the effect that Rule 8(d) only applies to 'material' or 'relevant' averments." 5 Wright and Miller, Federal Practice and Procedure: Civil § 1279, p. 354-355. We subscribe to that view, and we state the controlling proposition in this State clearly and succinctly: when a defendant makes a counterclaim denominated as such and the plaintiff fails to make a reply, the *material* or *relevant* averments of the counterclaim are deemed admitted.

[2] We hold that the averments in the counterclaim filed by defendant in this case were neither "material or relevant" nor essential in order for defendant to recover the $19,573.66 it paid the mortgagee. Our reasoning follows.

This case was tried before a judge sitting as a jury. We are required to give deference to the trier of fact. In this context, the statements made before the presentation of evidence become significant. Presumably, Mr. Spratt, as counsel for the defendant, began the following colloquy, since it was he who answered the court's question:[2]

.  .  .  .

"The final motion—the motion for entry of default and default judgment—I would say we would defer discussion of it at this time unless you would prefer to go ahead.

2. Who began the colloquy is not as significant as what was said.

"THE COURT: With respect to what?

"MR. SPRATT: The counterclaim in the case, Your Honor.

"THE COURT: All right.

"MR. HORN: Please the Court, it is my contention that the answer to the first — my issue in this case — against me — that the counterclaim's automatically in your behalf, is that correct?

"MR. SPRATT: That's what you told me.

"MR. HORN: And that's the way I see it, and it's based on the fact that under the insurance policy, they paid to the savings and loan association some $19,000. We're not entitled to recover on the primary suit, so it's automatic that they recover that from the defendants — the plaintiffs, and that's the matter in that suit.

"THE COURT: All right, and how many witnesses do you anticipate?

People are often surprised when they see what they have said in print. One could conclude, reading the colloquy set out above, that Mr. Horn was suggesting that the plaintiffs were not entitled to recover on their claims, and that the defendant was automatically entitled to recover from the plaintiffs. That would be no more a strained interpretation than the one which follows with our addition of the bracketed portions:

"Please the Court, it is my contention that [if] the answer to the first — [issue in my case] . . . [is] against me — [then] the counterclaim [is] automatically in . . . [the defendant's] behalf[.] [I]s that correct?

.   .   .

"[*If*] we're not entitled to recover on the primary suit, [then] it's automatic that they [the defendant] recover . . . from . . . the plaintiffs. . . ."

From the foregoing, two things seem immediately apparent. First, defendant did not aggressively or vigorously pursue at trial what has now become the focal point of its appeal — the plaintiffs' failure to file a reply. The parties agreed to "*defer discussion*" of

Connor v. Royal Globe Insur. Co.

the matter. Indeed, the trial proceeded with defendant seeking primarily to establish a valid, meritorious defense. Scant reference was made to plaintiffs' failure to file a reply. Second, although Mr. Horn made a stipulation in rather confusing language, the fact that Mr. Spratt said "[t]hat's what you told me," and the fact that the court proceeded suggest that the court and the attorneys on both sides knew that Mr. Horn meant the following:

> Either way the main case goes, the insurance company is entitled either to a credit or a judgment on its counterclaim for the amount it paid to the mortgagee, because if the plaintiff recovers, the insurance company is entitled to an offset for the amount paid to the mortgagee and if the plaintiff does not recover, the insurance company is entitled to a judgment against plaintiff for the amount it paid the mortgagee.

The fact that the Court ultimately awarded plaintiffs $105,000.00, the full amount of the policy, diminished by $19,573.66, the amount of defendant's counterclaim, supports this construction. Had the court not allowed the offset, defendant would have paid $19,573.66 more than it contracted to do.

A review of the allegations and the prayer for relief in the Answer and Counterclaim is necessary. After setting forth general allegations denying liability because plaintiffs had violated conditions of the policy, defendant set forth its affirmative defenses, to wit: A Third Defense that plaintiffs deliberately burned their property or caused it to be burned; a Fourth Defense that plaintiffs maliciously burned the building with the intent to defraud the defendant; a Fifth Defense that plaintiffs increased the hazard by permitting the sale of intoxicating beverages on the premises, allowed gambling, cooking, and sale of drugs, and did not restrict the club to members only; and a Sixth Defense that plaintiffs willfully concealed or misrepresented material facts and circumstances concerning the insurance.

After setting forth its affirmative defenses, the defendant, in a section of its answer styled "Counterclaim," re-alleged, in a single paragraph and in summary fashion, the separate allegations contained in its Third, Fourth, Fifth and Sixth Defenses. After setting forth the basis of its counterclaim in eleven numbered paragraphs, defendant in Paragraph Twelve stated,

---

---

"As a result of the violations of the conditions of the . . . policy by the plaintiffs, as hereinbefore set forth, the defendant is entitled to recover from the plaintiff the sum of $19,573.66."

Immediately following Paragraph Twelve of the counterclaim is the prayer for relief, which states:

WHEREFORE, the Defendant, having answered the complaint of the plaintiffs, prays that:

1. The plaintiffs have and recover nothing of it, and that the plaintiffs' complaint be dismissed; and

2. It have and recover of the plaintiffs on its counterclaim the sum of $19,573.66. . . .

In view of Paragraph Twelve of the counterclaim and the limited prayer for relief relating to the counterclaim, we cannot say that the trial court abused its discretion by concluding that the allegations in Paragraph Eight of the counterclaim were not necessary to grant defendant the relief it sought—$19,573.66. As we indicated, plaintiffs had already stipulated in open court that defendant was entitled, in all events, to recover that amount, and the defendant acknowledged as much in the colloquy between the court and the attorneys for both parties. Moreover, defendant had taken this position in its Answer. In its Seventh Defense, defendant said:

In the event that the defendant is liable to the plaintiff, which is denied, then the defendant is entitled to a set-off or credit of $19,573.66, which the defendant has paid to the plaintiffs' mortgagee, Home Savings and Loan Association, under the policy number YN 35-66-37, said payment being required under the policy *regardless of any violations of the policy conditions by the plaintiffs.* [Emphasis added.]

On the peculiar facts of this case, all defendant ever sought was $19,573.66, either by way of set-off *or* by way of relief on its counterclaim. Consequently, we believe Rules 7 and 8 of the North Carolina Rules of Civil Procedure should be considered in their entirety.

Applying the rules to the defendant's Answer and Counterclaim, plaintiffs are deemed to have denied defendant's affirmative defenses since the second sentence of Rule 8(d) provides

that averments in a pleading to which no response is allowed are deemed denied. The first sentence of Rule 8(d) provides that averments in a pleading to which responsive pleading is required are deemed admitted if no responsive pleading is filed. Ordinarily, the failure to file a reply to a counterclaim would require that the allegations in the counterclaim be admitted. However, on the facts of this case, this rule should not apply. Here, the allegations in defendant's counterclaim that plaintiffs burned the building in violation of the terms of the insurance policy were neither material nor necessary to the defendant's recovery. This is so because the parties had stipulated before trial that the defendant was entitled to a set-off or credit regardless of any violation of the policy by the plaintiffs. In essence, the defendant's counterclaim was not necessary for it to recover the $19,573.66 it paid the mortgagee. Since we view the counterclaim as adding nothing to the defendant's claim for the $19,573.66, we reject the defendant's argument that its shorthand version of its defenses, set forth in Paragraph 8 of its counterclaim also established a defense to plaintiffs' claim as well. More specifically, we reject defendant's argument that since no reply was filed to the counterclaim, plaintiffs admitted the allegations that they burned their own building and that because of this admission, plaintiffs could not collect under the terms of the policy.

In this context, we fail to see how the trial court abused its discretion in concluding (1) that the allegations in the counterclaim that plaintiffs violated the terms of the policy were not necessary in order for plaintiffs to recover the $19,573.66 it sought in the counterclaim; and (2) that an anomaly would result in this case, if the allegations in the counterclaim were deemed admitted by the first sentence of Rule 8(d) while the same allegations set forth as affirmative defenses are deemed denied by the second sentence of Rule 8(d). The trial court's position gives full application to both sentences in Rule 8(d), and it is the only stance that does.

## II

[3] Defendant's second assignment of error raises a point of evidence. Mr. Connor was arrested during the 5 April 1979 raid on the Club. During cross examination, Mr. Connor was asked whether on 29 May 1979 he had pleaded guilty in district court to

four counts of operating an illegal gambling house at the Club and four counts of operating a social club without an A.B.C. permit. Objections were sustained. The record suggests that Mr. Connor appeared in district court without an attorney and entered guilty pleas pursuant to a plea bargain; that he subsequently appealed to superior court and retained an attorney to represent him; and that all charges were dismissed in superior court. Defendant argues that the trial judge erred by refusing to allow the 29 May 1979 guilty pleas in evidence.

"A plea of guilty on a former trial may be admitted against the defendant as an admission. . . ." 2 Stansbury's N.C. Evidence § 177 (Brandis rev. 1973) at p. 44. In *Teachey v. Woolard*, 16 N.C. App. 249, 252, 191 S.E. 2d 903, 906, *cert. denied* 282 N.C. 430, 192 S.E. 2d 840 (1972), this Court said: [e]vidence that a defendant entered a plea of guilty to a criminal charge arising out of an automobile accident is generally admissible in a civil action for damages arising out of the same accident, although it is not conclusive and may be explained. *Grant v. Shadrick*, 260 N.C. 674, 133 S.E. 2d 457 (1963)." *See also Boone v. Fuller*, 30 N.C. App. 107, 226 S.E. 2d 191 (1976). A prior plea of guilty may not be used for any purpose when it is determined that the plea was not knowingly and understandingly entered, *State v. Alford*, 274 N.C. 125, 133-34, 161 S.E. 2d 575, 581 (1968), or when the plea was entered at a time when the defendant was denied his right to counsel, *White v. Maryland*, 373 U.S. 59, 10 L.Ed. 2d 193, 83 S.Ct. 1050 (1963). No such irregularity appears with respect to Mr. Connor's guilty pleas. Mr. Connor did not deny entering the pleas knowingly and understandingly. He explained that he decided to appeal his cases only when the State failed to carry out its part of the plea bargain. Mr. Connor did not show that he was denied his right to counsel at the time of the guilty pleas. He testified that he did not have an attorney, but he did not claim indigency, and he, in fact, retained an attorney to represent him in superior court. The only grounds for questioning admissibility of Mr. Connor's guilty pleas arises from his appeal for a trial *de novo* and the subsequent dismissal of the charges. In 2 Stansbury's N.C. Evidence § 177, n. 63 we find the following:

> At present, an appeal from District Court to Superior Court entitles the criminal defendant to trial *de novo* even if he pleaded guilty in District Court. "The judgment appealed

from is completely annulled and is not thereafter available for any purpose." *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *cert. denied*, 403 U.S. 940. . . . Clearly the language of the *Sparrow* opinion prevents evidentiary use of the guilty plea at the *de novo* trial, at least as substantive evidence and very likely for impeaching defendant as a witness. Whether evidence of the District Court plea is admissible in a civil case, *quaere*?

In other jurisdictions, it has been held that the withdrawal of a guilty plea and the subsequent dismissal of the charges does not affect admissibility of the plea as an admission against interest in a subsequent civil action involving the same facts. *Vaughn v. Jonas*, 31 Cal. 2d 586, 191 P. 2d 432 (1948); *Morrissey v. Powell*, 304 Mass. 268, 23 N.E. 2d 411 (1939); *see generally* 29 Am. Jur. 2d, Evidence § 701 (1967); Annot., 18 A.L.R. 2d 1287 (1951).

Assuming that the trial court should have admitted the evidence of Mr. Connor's guilty pleas in this case, we can find no prejudicial error in their exclusion. Defendant argues that the pleas would have tended to show that Mr. Connor helped operate the Club and that the hazard of fire was increased by the conduct of gambling and illegal liquor sales on the premises.

Defendant also argues that Mr. Connor's guilty pleas would have served to impeach his credibility. However, we find the value of the evidence to be minimal in light of Mr. Connor's explanation of his pleas and the subsequent dismissal of the charges. This assignment of error is overruled.

### III

[4] By his final assignment of error, defendant essentially contends that the following findings of fact were not supported by the evidence:

14. That [the S.B.I. agent (Lane)] who gather [sic] samples from the debris for analysis was unable to state where the fuel lines hereinabove were located with respect to the samples. . . .

. . .

16. That agent Hatcher of the S.B.I. examined the building, but does not recall the fuel lines or copper tubing

hereinabove described which was observed by [Agent Lane], but did observe a scalding on concrete floor and obtained samples from this area. . . .

According to the defendant, the trial court relied on this "erroneous finding of fact in concluding that the defendant had failed to prove that the fire had been deliberately set." We disagree. Relevant portions of S.B.I. Agent Lane's cross, redirect and recross examination testimony are set out below:

[CROSS EXAMINATION]

I believe the building was heated by a ceiling-type furnace. I believe it was an oil furnace. As for whether there were copper fuel lines running through the ceiling, they were all down at that time and I saw them.

[REDIRECT EXAMINATION]

I can't specifically recall the location of the fuel lines in the building other than the back kitchen area where the furnace was located. I did not see any fuel oil lines in the vicinity where I took my samples.

[RECROSS EXAMINATION]

I can't recall specifically seeing evidence that copper fuel lines ran to the furnace in the back of the dance hall area. I'm not going to deny they were there. As for whether I'm going to deny where they were in that room, my answer is "no."

S.B.I. agent Hatcher, testifying for the defendant, stated:

[DIRECT EXAMINATION]

The interior of the building was completely involved by fire. The contents were burned, the roof had burned, and fallen into the building. The Ceiltex on the ceiling had come loose and fallen on the floor in the dancing area of the building where the tables were located . . . We proceeded to examine this floor underneath the Ceiltex, and it was in this area where Mr. Lane and I obtained samples. I do not remember seeing any copper tubing in the area where these samples were taken. . . .

[CROSS EXAMINATION]

I do not recall moving any fuel lines to find the spalling spots. If there had been any fuel lines there, I think I would remember them.

From this testimony, the trial court, sitting as a jury, could, but was not compelled to, have found that agent Lane saw fuel lines in the floor but could not say where they were and that Agent Hatcher couldn't recall seeing fuel lines in the floor but thinks he would remember them if they were there. This assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is

Affirmed.

Chief Judge MORRIS and Judge ARNOLD concur.