IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-355

Filed: 17 March 2020

Mecklenburg County, No. 15CVS22885

JAMES GARRETT HARPER, M.D., Plaintiff,

v.

VOHRA WOUND PHYSICIANS OF NY, PLLC; VOHRA WOUND PHYSICIANS MANAGEMENT, LLC; VOHRA HEALTH SERVICES, PA; JAPA VOLCHOK, D.O.; and AMEET VOHRA, M.D., Defendants.

Appeal by Defendants from Order and Judgment entered 22 June 2017 and Order Denying Defendants' Post-Judgment Motions entered 18 July 2017 by Judge Eric L. Levinson in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 November 2018.

*Brown, Faucher, Peraldo & Benson, PLLC, by Drew Brown, for plaintiff-appellee.*

*Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, Robert H. Edmunds, Jr., and Kip D. Nelson, for defendants-appellants.*

MURPHY, Judge.

On appeal, Defendant contends the trial court erred by: (1) denying its motion for judgment notwithstanding the verdict on its breach of contract counterclaim; (2) permitting Plaintiff to file an untimely reply to Defendant's amended counterclaims; and (3) awarding liquidated damages based on gross pay rather than net pay. For the reasons discussed below, we disagree and affirm.

## BACKGROUND

Dr. James Garrett Harper ("Dr. Harper") began practicing medicine as a plastic surgeon in Charlotte in 2012. The practice that employed Dr. Harper did not accept Medicare or Medicaid due to the effect on "billing and reimbursements from other insurance companies" and its ability to "get paid more for a [given] surgery" if Medicaid and Medicare were not accepted. As an employee of the practice, Dr. Harper completed a "Medicare Opt-Out Affidavit." The Opt-Out Affidavit allowed Dr. Harper to "provide services to Medicare beneficiaries only through private contracts that meet the criteria of §40.8 for services that, but for their provision under a private contract, would have been Medicare-covered services." However, the Opt-Out Affidavit prevented Dr. Harper from submitting "a claim to Medicare for any service furnished to a Medicare beneficiary during the opt-out period" and receiving "direct or indirect Medicare payment for services . . . furnish[ed] to Medicare beneficiaries with whom [Dr. Harper] privately contracted[.]" Dr. Harper completed his most recent Opt-Out Affidavit in 2014, and the opt-out period was two years.

Dr. Harper ended his employment with this practice in 2015. While litigating the enforceability of his non-compete agreement with the practice, Dr. Harper decided to apply for a position with Vohra Wound Physicians of NY ("Vohra") until he could return to the field of plastic surgery. Vohra provides wound management services primarily to elderly patients in nursing homes in various states, including North

Carolina. In his role with Vohra, Dr. Harper would travel around the state, primarily to "understaffed and undermanned" nursing care facilities.

On his application to Vohra, Dr. Harper was asked to "[d]escribe any past/pending disciplinary/restriction in relation to Medicare/Medicaid." Dr. Harper answered, "None, but I did not accept Medicaid/Medicare at my last job." After multiple subsequent rounds of interviews, Dr. Harper was offered the physician position with Vohra, and the parties entered into an "Employment Agreement" in June 2015. Under "Article II: Duties and Responsibilities" of the employment agreement, the parties agreed to the following provision:

> 2.5 General Professional Qualifications and Obligations.
> At all times during the term of this Agreement, EMPLOYEE:
>
> . . .
>
> (b) shall be qualified to participate and shall participate in Medicare, Medicaid and other state medical assistance and federal programs, and not be under current exclusion, debarment or sanction by any state or federal health care program, including Medicare and Medicaid;

At the start of his employment, Dr. Harper completed a "Medicare Enrollment Application" and "Reassignment of Medicare Benefits" to Vohra and made Vohra his surrogate for the Medicare enrollment process. Yet, approximately twelve days later, Vohra was informed that Dr. Harper's Medicare enrollment application was denied. The denial cited Dr. Harper's 2014 Medicare Opt-Out Affidavit, stating: "The provider

has an active opt-out affidavit effective until 07/23/2016. The provider cannot enroll in Medicare until after this date." The Opt-Out Affidavit could not be withdrawn.

The Vice-President of Vohra Wound Physicians Management, LLC called Dr. Harper upon learning of his ineligibility. Dr. Harper "stated that in his previous job there was no Medicare that was accepted by the practice, they had opted out of Medicare." Dr. Harper stopped seeing patients, and Vohra decided to "stop all processes related to Dr. Harper[,]" and withhold a portion of Dr. Harper's October 2015 wages for several weeks while it was "doing an investigation[.]" On 30 November 2015, Vohra terminated Dr. Harper's employment[1] and requested that Dr. Harper reimburse the practice for $88,133.43 it claimed the practice incurred "[a]s a result of [Dr. Harper's] failure to disclose this critical information[.]"

Dr. Harper filed suit against Vohra[2], alleging, among other claims, a violation of the North Carolina Wage and Hour Act.[3] Vohra subsequently asserted counterclaims for fraud and breach of contract. After a trial in Mecklenburg County Superior Court, the jury returned a verdict finding that $29,035.50 in wages was owed to Dr. Harper. Regarding Vohra's counterclaims, the jury found that Dr. Harper had not breached his contract and that Vohra was not damaged by any fraud of Dr. Harper. Vohra filed post-judgment motions requesting that the trial court enter a

---

[1] The Employment Agreement signed by the parties listed "EMPLOYEE'S exclusion or debarment from the Medicare or Medicaid programs" as a ground for immediate termination.

[2] We refer to all Defendants collectively as "Vohra."

[3] The other claims in Dr. Harper's complaint are not relevant to this appeal.

directed verdict on its breach of contract counterclaim and amend the damages award. The trial court denied these motions. Vohra timely appeals.

## ANALYSIS

### A. Breach of Contract Counterclaim

Vohra first argues the trial court erred in denying its motion for judgment notwithstanding the verdict on the breach of contract counterclaim. We disagree.

We have described our review of trial court rulings on motions for judgment notwithstanding the verdict:

> A motion for a judgment notwithstanding the verdict is, fundamentally, the renewal of an earlier motion for a directed verdict. When a motion for judgment notwithstanding the verdict is brought, the issue is whether the evidence is sufficient to take the case to the jury and to support a verdict for the non-moving party. The evidence is to be considered in the light most favorable to the non-moving party, and the non-moving party is entitled to all reasonable inferences that can be drawn from that evidence.

*Ridley v. Wendel*, 251 N.C. App. 452, 458, 795 S.E.2d 807, 812-13 (2016) (citations, alterations, and internal quotation marks omitted). This is a high standard for the party moving for judgment notwithstanding the verdict, and the trial court is required to deny the motion where the verdict for the non-moving party is supported by "more than a scintilla of evidence . . . ." *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009). We review a trial court's order ruling on a

motion for judgment notwithstanding the verdict de novo. *Austin v. Bald II, L.L.C.*, 189 N.C. App. 338, 341-42, 658 S.E.2d 1, 4, (2008).

The elements of a breach of contract claim are well established: (1) existence of a valid contract and (2) breach of the terms of that contract. *Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016). In determining whether there has been a breach of the terms of a valid contract, we must necessarily look to the language of those terms. "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Lynn v. Lynn*, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010) (citation, ellipses, and internal quotation marks omitted). Conversely, if the contract is ambiguous, "interpretation of the contract is a matter for the jury." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001).

Ambiguity exists in a contract's terms "when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012). "Stated differently, a contract is ambiguous when the writing leaves it uncertain as to what the agreement was." *Salvaggio v. New Breed*

*Transfer Corp.*, 150 N.C. App. 688, 690, 564 S.E.2d 641, 643 (2002) (internal citation and quotation marks omitted).

The Employment Agreement signed by both parties contained the following provision:

> 2.5 General Professional Qualifications and Obligations. At all times during the term of this Agreement, EMPLOYEE:
>
> . . .
>
> (b) shall be qualified to participate and shall participate in Medicare, Medicaid and other state medical assistance and federal programs, and not be under current exclusion, debarment or sanction by any state or federal health care program, including Medicare and Medicaid;

The provision of the Employment Agreement does not define the term "exclusion" by health care programs.

Dr. Harper argues there is ambiguity in the requirements of Section 2.5(b). Namely, he contends the clause "and not be under current exclusion, debarment or sanction by any state or federal health care program . . . " qualifies the preceding requirement that he be qualified to participate—and shall participate—in the listed health care programs and that the words "current exclusion, debarment or sanction" are vague and ambiguous. He contends these terms suggest *disciplinary* action by a health care program, "which limit the first portion of the provision." Thus, his argument is that the language does not unambiguously cover a voluntary opt-out affidavit. Given the placement of the clause and the absence of a definition for the

term "exclusion" in the Employment Agreement, we conclude this to be a reasonable interpretation.

In contrast, Vohra argues the language of Section 2.5(b) contains two distinct requirements of the employee, Dr. Harper, with respect to Medicare: that he (1) shall be qualified to participate in Medicare and shall participate in Medicare and (2) not be under current exclusion, debarment, or sanction. Vohra contends the language that required Dr. Harper to be "qualified to participate" and to participate in Medicare is a stand-alone requirement and that this language is unambiguous – it required Dr. Harper to be qualified to participate and to participate in Medicare, which he could not do because of the Opt-Out Affidavit. Vohra argues the remaining requirement that Dr. Harper "not be under current exclusion, debarment, or sanction" is a separate requirement and does not qualify or describe the first requirement regarding participation. This interpretation is also reasonable.

The existence of more than one reasonable interpretation of the language in Section 2.5(b) is precisely what renders that provision ambiguous. *See Variety Wholesalers, Inc.*, 365 N.C. at 525, 723 S.E.2d at 748. Given this ambiguity, the interpretation of Section 2.5(b) was properly placed before the jury. Moreover, because it is a reasonable inference that Section 2.5(b) did not cover or address a voluntary opt-out affidavit, we cannot conclude the trial court erred in declining to disturb the jury's verdict finding that Dr. Harper did not breach the contract. *See*

*N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979) ("[I]t is proper to direct verdict for the party with the burden of proof if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn."). We affirm the trial court's decision to deny Vohra's motion for directed verdict on this claim.

## B. Reply to Counterclaim

Vohra next argues the trial court abused its discretion in permitting Dr. Harper to file an untimely reply to Vohra's amended counterclaims for fraud and breach of contract. We disagree.

### 1. Procedural History

In its original answer to Dr. Harper's complaint, Vohra asserted counterclaims for fraud and breach of contract, to which Dr. Harper filed a timely reply. Dr. Harper moved to dismiss these counterclaims approximately two months later, and Vohra filed a motion for leave to amend its counterclaims. The trial court granted that motion, ordering Vohra to file and serve its amended counterclaims within two days and Dr. Harper to reply within thirty days. In its amended counterclaims, Vohra added allegations to support its claims of fraud and breach of contract. Dr. Harper did not file a reply to the amended counterclaims within the thirty-day time period.

Prior to trial, Vohra filed a motion in limine "to exclude evidence in opposition" to the allegations added in the amended counterclaim. The trial court indicated that

it agreed with the motion in limine, but held open the question of whether assertions of law in a counterclaim are deemed admitted when no reply is made. When the issue arose again during trial, Dr. Harper sought to file a handwritten reply to the amended counterclaims denying the added allegations. The trial court reversed its initial decision regarding Vohra's motion in limine and allowed Dr. Harper to file the handwritten reply.

**2. Discussion**

We review the trial court's exercise of discretion in allowing the admission of an untimely reply to a counterclaim for an abuse of that discretion. *Rossi v. Spoloric*, 244 N.C. App. 648, 654, 781 S.E.2d 648, 653 (2016). "An abuse of discretion 'results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *Id.* at 651, 781 S.E.2d at 651-52 (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).

When a trial court orders a reply to a counterclaim, the plaintiff must serve his or her reply to the counterclaim "within 30 days after service of the order, unless the order otherwise directs." N.C.G.S. § 1A-1, Rule 12(a)(1) (2017). However, Rule 6(b) of the North Carolina Rules of Civil Procedure "gives the trial court wide discretionary authority to enlarge the time within which an act may be done" and permit an otherwise untimely reply. *Nationwide Mut. Ins. Co. v. Chantos*, 21 N.C. App. 129, 130, 203 S.E.2d 421, 423 (1974). Rule 6(b) states, "Upon motion made after

the expiration of the specified period, the judge may permit the act to be done where the failure to act was the result of excusable neglect." N.C.G.S. §1A-1, Rule 6(b). Thus, the trial court retains "broad authority" to extend the time period for a responsive pleading and permit an otherwise untimely reply "upon a finding of excusable neglect." *Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988) (internal quotation marks omitted).

Rule 8(d) governs the effect of a party's failure to deny averments made in a pleading to which a responsive pleading is required. The rule states: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." N.C.G.S. § 1A-1, Rule 8(d) (2017). In limited circumstances, however, we have declined to strictly adhere to Rule 8(d) "in the context of a plaintiff's failure to file a reply to a counterclaim[.]" *Crowley v. Crowley*, 203 N.C. App. 299, 307, 691 S.E.2d 727, 733 (2010) (quoting *Connor v. Royal Globe Ins. Co.*, 56 N.C. App. 1, 5, 286 S.E.2d 810, 814 (1982)). Specifically, we held "that a plaintiff's failure to file a reply re-asserting allegations already made in the complaint in response to averments in a defendant's counterclaim which do no more than present denials in affirmative form of the allegations of the complaint does not amount to an admission pursuant to . . . Rule 8(d)." *Id.* at 307, 691 S.E.2d at 733 (internal quotation marks omitted).

In so holding, we looked to federal decisions for guidance. In *Vevelstad v. Flynn*, 230 F.2d 695 (9th Cir. 1956), *cert. denied*, 352 U.S. 827, 1 L. Ed. 2d 49 (1956), the defendants filed an answer containing a section entitled "a fourth defense and counterclaim." *Id.* at 703. The plaintiffs failed to reply to the counterclaim, which the defendants argued "constituted an admission of the allegations of that part of the answer." *Id.* The trial court noted, and the Ninth Circuit affirmed:

> Obviously, by incorporating such allegations into what is denominated a defense and counterclaim, the defendant may not compel the plaintiff to repeat, in negative form in a reply, the allegations of his complaint, and hence, I conclude that the failure to file a reply in the instant case does not constitute an admission under rules 7(a) and 8(d) F.R.C.P.

*Id.* (internal quotation marks omitted). We found this interpretation "persuasive and in line with the spirit of our Court's prior decisions interpreting . . . Rule 8." We stated, "Because of our general policy of proceeding to the merits of an action when to do so would not violate the letter or spirit of our Rules, this Court has refused to adhere strictly to Rule 8(d) in the context of a plaintiff's failure to file a reply to a counterclaim in *Eubanks v. Insurance Co.* and *Johnson v. Johnson*." *Crowley*, 203 N.C. App. at 307, 691 S.E.2d at 733 (citation, alterations, and internal quotation marks omitted).

Here, the trial court found *Crowley* applicable and determined Dr. Harper's failure to file a reply to Vohra's amended counterclaim did not amount to admissions under Rule 8(d). Nevertheless, the trial court permitted Dr. Harper to file the

untimely reply to Vohra's amended counterclaims denying the amended allegations therein. Since the trial court permitted Dr. Harper to file the untimely reply, rather than simply denying Vohra's motion in limine, it was required to consider whether there was a showing of excusable neglect and exercise its discretion under that standard. *See Chantos*, 21 N.C. App. at 131, 203 S.E.2d at 423 ("If the request for enlargement of time is made after the expiration of the period of time within which the act should have been done, there must be a showing of excusable neglect."). We agree with Vohra that the trial court did not consider excusable neglect and did not exercise discretion under that standard, thus his decision to permit an untimely reply was an abuse of discretion. *See State v. Nunez*, 204 N.C. App. 164, 170, 693 S.E.2d 223, 227 (2010) ("When a trial judge acts under a misapprehension of the law, this constitutes an abuse of discretion."). However, we conclude this procedural error did not prejudice Vohra, as we agree with the trial court that Dr. Harper's failure to file a reply did not amount to an admission under Rule 8(d).

In his complaint, Dr. Harper asserted, among other things, that he was an employee and was owed compensation under the North Carolina Wage and Hour Act for his services rendered during October 2015. In its amended answer to Dr. Harper's claims, Vohra submitted affirmative defenses of fraud and breach of contract. In its affirmative defense for fraud, Vohra stated:

<u>Second Affirmative Defense: Fraud</u>

- 13 -

> The contract upon which this action is based was procured by fraud in that Plaintiff intentionally misrepresented his ability to accept Medicare/Medicaid on his employment application. The contract is thus unenforceable against Defendants and this action is barred.
>
> . . .
>
> Fifth Affirmative Defense: Breach by Plaintiff
>
> Due to Plaintiff's material misrepresentation on his employment application he was in breach of the contract from the moment the contract was entered into. The contract is thus unenforceable against Defendants and this action is barred.

Vohra asserted counterclaims seeking relief for the same alleged fraud and breach of contract, and the amended counterclaims included additional allegations related to and in support of the counterclaims.

The counterclaims for fraud and breach of contract do no more than present denials of the complaint's allegations in affirmative form. As evidenced by their inclusion as affirmative defenses, Vohra asserted fraud and breach of contract as defenses to Dr. Harper's claim. That is, it argued that Dr. Harper's employment agreement was an unenforceable contract due to fraud and material misrepresentation. The counterclaims for fraud and breach of contract merely reiterated these defenses in affirmative form and sought relief therefrom. As such, Dr. Harper needed not repeat in negative form the allegations of his complaint. Accordingly, the trial court did not err in its determination that Dr. Harper's failure

to file a reply to the amended counterclaims did not amount to admissions under Rule 8(d).

Additionally, we note the trial court's decision not to adhere strictly to Rule 8(d) in this context was in line with our "general policy of proceeding to the merits of an action." *Crowley*, 203 N.C. App. at 307, 691 S.E.2d at 733 (citation and internal quotation marks omitted). Dr. Harper filed a reply to Vohra's original counterclaims for fraud and breach of contract. In this reply, he denied the allegations therein. When Vohra amended its counterclaims to include additional allegations supporting the counterclaims, it was on notice that Dr. Harper would similarly deny the additional allegations and suffered no prejudice. We affirm.

## C. Damages

In its final argument, Vohra contends the trial court erred in awarding liquidated damages under the North Carolina Wage and Hour Act (NCWHA) to an amount equaling Dr. Harper's gross pay rather than his net pay. It contends that recovery under the NCWHA for "unpaid amounts" must be interpreted as recovery of net pay, or the employee's gross pay less proper withholdings. Accordingly, Vohra argues the liquidated damages award should have been $18,483.76, Dr. Harper's gross pay of $29,035.50 less withholdings.

The question of whether damages awarded under the NCWHA must be gross or net wages is a question of statutory interpretation and requires us to turn to the

language of the NCWHA.  "We review questions of statutory interpretation de novo." *City of Asheville v. Frost*, 370 N.C. 590, 591, 811 S.E.2d 560, 561 (2018).  "Legislative intent controls the meaning of a statute." *Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986).  "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895–96 (1998) (citing *Shelton*, 318 N.C. at 81-82, 347 S.E.2d at 828).  "First among these considerations, however, is the plain meaning of the words chosen by the legislature; if they are clear and unambiguous within the context of the statute, they are to be given their plain and ordinary meanings." *Id.* at 522, 507 S.E.2d at 895–96.

N.C.G.S. § 95-25.22 specifically provides for the recovery of unpaid wages based upon a violation of the NCWHA:

> (a) Any employer who violates the provisions of [N.C.G.S. § 95-25.7 (Payment to Separated Employees)] shall be liable to the employee or employees affected in the amount of their . . . unpaid amounts due under [N.C.G.S. § 95-25.7], as the case may be, plus interest at the legal rate set forth in [N.C.G.S.] § 24-1, from the date each amount first came due.
>
> (a1) In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation

was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

N.C.G.S. § 95-25.22(a)-(a1) (2017). Neither N.C.G.S. § 95-25.22 nor any other provision in the NCWHA defines "unpaid amounts," and we have no caselaw addressing whether such amounts should be calculated as gross or net pay. The NCWHA does, however, define "wages":

> "Wage" paid to an employee means compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities. For the purposes of G.S. 95-25.6 through G.S. 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments.

N.C.G.S. § 95-25.2(16) (2017).

Equally informative, N.C.G.S. § 95-25.22 explains that the amounts to be paid are determined by N.C.G.S. §§ 95-25.6-.12, which provide specific provisions for different types of wages. *See generally* N.C.G.S. § 95-25.1 *et. seq.* (2017). Here, Dr. Harper's claim for payment was based on N.C.G.S. § 95-25.7, which states:

> Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday either through the regular pay channels or by mail if requested by the employee. Wages based on

> bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs. Such wages may not be forfeited unless the employee has been notified in accordance with G.S. 95-25.13 of the employer's policy or practice which results in forfeiture. Employees not so notified are not subject to such loss or forfeiture.

N.C.G.S. § 95-25.7 (2017).

The NCWHA authorizes employers to withhold taxes from wages. *See* N.C.G.S. § 95-25.8 (2017) ("An employer may withhold or divert any portion of an employee's wages when: (1) The employer is required or empowered to do so by State or federal law[.]"). Thus, based upon the plain language of the NCWHA, the "unpaid amounts" due under § 95-25.7 were Dr. Harper's "wages" as defined by N.C.G.S. § 95-25.2(16). N.C.G.S. § 95-25.22; *see* N.C.G.S. § 95-25.1 *et. seq.* Consequently, the fact that Vohra could "withhold or divert" a portion of Dr. Harper's "wages" in accordance with state and federal law does not change the fact that they are "unpaid amounts" which the employer should have paid out, either directly to the employee or for the employee's benefit, but for the violation of the NCWHA. N.C.G.S. § 95-25.8; *see generally* N.C.G.S. § 95-25.1 *et. seq.* The plain language of N.C.G.S. § 95-25.22 provides that upon violation the employer must pay the "unpaid" amounts to the employee. *See* N.C.G.S. § 95-25.22. Here, the amount left unpaid by Vohra's NCWHA violation was $29,035.50. Moreover, liquidated damages may be awarded in an

amount "equal" to the unpaid amount, which is exactly what the trial court did in awarding "liquidated damages to Dr. Harper in the amount of $29,035.50."[4] *Id.*

A plain reading of the NCWHA is sufficient to resolve the issue of damages in this case. The NCWHA does not explicitly define "unpaid amounts" but its definition of "wages" read in concert with the relevant provisions described above demonstrates that the trial court did not err in awarding Dr. Harper liquidated damages based upon his gross pay. The trial court's order is affirmed as it relates to the issue of damages.

## CONCLUSION

The trial court did not err in denying Vohra's motion for judgment notwithstanding the verdict on the breach of contract counterclaim where the jury's verdict was supported by more than a scintilla of evidence. The trial court's decision to permit Dr. Harper to file an untimely reply to Vohra's amended counterclaims did not prejudice Vohra. Lastly, the trial court did not err in awarding liquidated damages based upon gross pay. For these reasons, we affirm.

AFFIRMED.

Judges STROUD and DIETZ concur.

---

[4] The trial court could in its discretion award a lesser amount, but Vohra has not argued on appeal the trial court abused its discretion in awarding the maximum liquidated damages award allowed under the statute. *See* N.C.G.S. § 95-25.22 (2017).